1   ROB BONTA, State Bar No. 202668
    Attorney General of California
2   ED OCHOA (SBN 144842)
    TRACY L. WINSOR (SBN 186164)
3   Senior Assistant Attorneys General
    MICHAEL P. CAYABAN (SBN 179252)
4   SARAH MORRISON (SBN 143459)
    Supervising Deputy Attorneys General
5   JOSHUA M. CAPLAN (SBN 245469)
    NATALIE E. COLLINS (SBN 338348)
6   ELIZABETH SONG (SBN 326616)
    TAYLOR WETZEL (SBN 329637)
7   Deputy Attorneys General
     600 West Broadway, Suite 1800
8    San Diego, CA 92186-5266
     Telephone: (619) 738-9303
9    E-mail:  Josh.Caplan@doj.ca.gov

10  *Attorneys for Plaintiff the People of the State of California,*
    *by and through Rob Bonta, the Attorney General of the*
11  *State of California, and the California Air Resources Board*

12

13                IN THE UNITED STATES DISTRICT COURT

14                FOR THE DISTRICT OF COLUMBIA

15

16  PEOPLE OF THE STATE OF              CASE NO.
    CALIFORNIA,
17                                      COMPLAINT FOR PERMANENT
                         Plaintiff,     INJUNCTION, CIVIL PENALTIES,
18                                      AND OTHER LEGAL AND
                                        EQUITABLE RELIEF
19       v.

20  CUMMINS INC.,

21                       Defendant.

22

23       Plaintiff the People of the State of California, acting by and through Rob

24  Bonta, Attorney General of the State of California in his independent capacity (the

25  "California Attorney General"), and the California Air Resources Board ("CARB"),

26  represented by the Office of the California Attorney General (collectively,

27  "California Plaintiff"), bring this civil law enforcement action against Cummins

28  Inc. ("Defendant" or "Cummins").  This action is brought under California laws

                                      1

and regulations relating to the control of harmful air pollutants and the prevention of unfair competition and public nuisance, and under the Clean Air Act ("CAA"), 42 U.S.C. § 7604(a)(1), and the California State Implementation Plan approved by the United States Environmental Protection Agency ("EPA") and codified at 40 C.F.R. part 52, subpart F–California, and 81 Fed. Reg. 39424-01.  Plaintiff alleges the following on information and belief:

**INTRODUCTION**

1.      Defendant sold or caused to be sold 6.7 liter diesel engines installed in model year 2013 through 2023 RAM 2500 and RAM 3500 vehicles ("Subject Vehicles") in California that failed to comply with California and federal laws and regulations governing vehicle emissions and certifications.[1]  Approximately 97,806 Subject Vehicles were sold in California.

2.      To combat dangerous levels of air pollution, California has regulated pollutants for many years and was the first state to regulate automobile tailpipe emissions.  California's air-quality regulations preceded the federal CAA, and the CAA preserves California's authority to set and enforce its own air quality standards.  To legally import, offer for sale, or sell vehicles or engines in California, a manufacturer must submit a certification application and obtain an Executive Order from CARB certifying the vehicles or engines for sale.  This regulatory scheme is designed to ensure that vehicles and engines sold in California comply with the state's strict emissions standards, including standards limiting oxides of nitrogen ("NOx") emissions.  NOx is a key contributor to ambient ozone and fine particulate matter pollution in California, both of which have a detrimental effect on public health and the environment.

3.      Defendant's certification applications for the Subject Vehicles failed to disclose Auxiliary Emission Control Devices ("AECDs") that significantly affect

---

[1] The Subject Vehicles are further identified in paragraph 45.

the emissions control systems, making them undisclosed and unapproved.  The Subject Vehicles therefore do not match the configurations specified in the certification applications submitted to CARB by Defendant.  Based on these inaccurate and incomplete disclosures, Defendant obtained Executive Orders allowing import, offer for sale, or sell the non-compliant Subject Vehicles in California.

4.     Further, some of the undisclosed AECDs are defeat devices in violation of California law, either operating alone or in combination with each other.  A defeat device is an AECD that reduces the effectiveness of the emission control system under conditions that may reasonably be expected to be encountered during normal vehicle operation and use and does not meet one of four exceptions set forth in the regulations.  40 C.F.R. § 86.1803-01.

5.     These undisclosed AECDs and defeat devices in Subject Vehicles, alone or in combination, cause the vehicles to emit NOx at dramatically elevated levels during certain real world driving conditions in comparison to their performance during regulated emissions tests.

6.     Defendant's actions violated various California laws concerning vehicle certification and emissions.

7.     Defendant's actions also violated California's on-board diagnostic regulations.  The on-board diagnostic system ensures a vehicle's emission control system operates properly for the life of the vehicle, and helps repair technicians diagnose and fix problems with the system.

8.     The Subject Vehicles also contain several unreported, unapproved "running changes," as defined under 40 C.F.R. § 86.1803-01, and "field fixes," as defined in the "California 2001 through 2014 Model Criteria Pollutant Exhaust Emission Standards and Test Procedures and 2009 through 2016 Model Greenhouse Gas Exhaust Emission Standards and Test Procedures for Passenger Cars, Light-Duty Trucks, and Medium-Duty Vehicles." These running changes and

3

1    field fixes have resulted in, and continue to result in, increased NOx emissions from

2    each Subject Vehicle in excess of California limits.

3         9.       Through this action, California Plaintiff seeks: (1) an order

4    preliminarily and permanently enjoining Defendant from violating California

5    emission control statutes and regulations; and (2) an order requiring Defendant to

6    remedy its violations of California law; and (3) civil penalties along with other

7    appropriate relief, including attorney fees.

8                                   **JURISDICTION**

9         10.      The Court has subject matter jurisdiction over this action pursuant to

10   28 U.S.C. § 1331 because Plaintiff asserts claims under 42 U.S.C. § 7604(a)(1).

11   The Court has supplemental jurisdiction over all other claims under 28 U.S.C. §

12   1367 because the other claims arise from or form part of the same case or

13   controversy under Article III of the United States Constitution.

14        11.      The Court has personal jurisdiction over Defendant under District of

15   Columbia Code § 13-423.  Defendant directly or indirectly interacted with CARB

16   throughout the Executive Order application process for the Subject Vehicles and

17   intentionally imported, offered for sale, sold (or caused to be sold), or leased (or

18   caused to be leased) the Subject Vehicles in California and in this District.  The

19   Court's exercise of jurisdiction over Defendant is consistent with due process.

20        12.      California Plaintiff has complied with the notice requirements of the

21   Clean Air Act, as required by 42 U.S.C. § 7604(b)(1)(A).

22                                      **VENUE**

23        13.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3)

24   because Defendant is subject to the Court's personal jurisdiction in this District.

25

26

27

28

**PARTIES**

I.   **CALIFORNIA PLAINTIFF**

14.   California Plaintiff is the People of the State of California, and brings this action by and through CARB and the California Attorney General acting in his independent capacity.

15.   CARB is a public agency of the State of California within the California Environmental Protection Agency.  Among other duties and responsibilities, CARB is charged with controlling motor vehicle emissions to systematically address the serious air pollution problems they cause.  To that end, California Health and Safety Code §§ 43101 and 43104, among other statutory provisions, direct CARB to adopt and implement emission standards for new motor vehicles, and test procedures and any other procedures necessary to determine whether the vehicles or engines comply with those emissions standards.  California Health and Safety Code § 43017 authorizes CARB to bring a civil action to enjoin any violation of Division 26, Part 5 (§§ 43000-44299.91, Vehicular Air Pollution Control) of the California Health and Safety Code or any CARB rule or regulation (and expressly excepts CARB from any requirement that it allege inadequate remedy at law, irreparable damage, or loss to obtain the requested injunction).  California Health and Safety Code §§ 43016, 43154, 43211, and 43212 subject any person who violates emissions standards, test procedures, and other CARB regulations to civil penalties.[2]  California Health and Safety Code §§ 43150-43154 provide CARB with the authority to ensure that only motor vehicles that meet CARB's emissions regulations, and that are certified by CARB, are imported,

_____

[2] Sections 43016, 43154, 43211, and 43212 of the California Health and Safety Code were amended, effective January 1, 2017, primarily to modify the penalty amounts and structure.  See 2016 Cal. Legis. Serv. Ch. 604 (A.B. 1685, "AIR POLLUTION—MOTOR VEHICLES—FINES AND PENALTIES").  The previous versions of the statutes apply to violations occurring before January 1, 2017.

5

COMPLAINT – PEOPLE OF THE STATE OF CALIFORNIA v. CUMMINS INC.

offered for sale, or sold and operated in California.  CARB is empowered to obtain civil penalties and injunctive relief for violations of these provisions.[3]

16.     The California Attorney General, as the chief law enforcement officer of the State of California, is charged with ensuring that the laws of California are adequately and uniformly enforced. The California Attorney General has broad independent power to enforce state laws pursuant to the California Constitution (Cal. Const., art. V, § 13) and the California Government Code § 12511.  The California Attorney General also is authorized by California Civil Code §§ 3479, 3480, 3490, 3491, and 3494; California Business and Professions Code §§ 17203, 17204, 17206, 17535, and 17536; and California Code of Civil Procedure §§ 731 and 1021.8.

17.     The State of California and its political subdivisions, including CARB, are "persons" under 42 U.S.C. § 7602(e) and § 7604(a) and are thus authorized and have standing to bring suit under the CAA.  In addition, the general CAA prohibition against attempts by a state (or political subdivision) to adopt or enforce its own standards related to the control of emissions from new motor vehicles does not apply to California Plaintiff insofar as the State of California has obtained a waiver from the federal government to adopt and enforce its own emission standards that meet or exceed federal standards.  42 U.S.C. §§ 7507, 7543(b).

## II. DEFENDANT

18.     Defendant Cummins Inc. ("Cummins") is an American corporation headquartered in Columbus, Indiana.  Cummins manufacturers and services engines and other vehicle components.  Cummins maintains facilities in California,

---

[3] Section 43154 of the California Health and Safety Code, which authorizes civil penalties for violations of these statutes, was amended, effective January 1, 2017, primarily to modify the penalty amounts and structure.  See 2016 Cal. Legis. Serv. Ch. 604 (A.B. 1685, "AIR POLLUTION—MOTOR VEHICLES—FINES AND PENALTIES").  The prior version of the statute applies to violations occurring before January 1, 2017.

1   including in West Sacramento, Downey, and San Leandro.  Cummins, either

2   directly or through its predecessors and agents, has transacted and continues to

3   transact business in the State of California and throughout the United States,

4   including in this judicial district.  Cummins, either directly or through its

5   predecessors and agents, designed the engines incorporated into the Subject

6   Vehicles and performed emissions tests on the Subject Vehicles.  Cummins

7   employees regularly communicated with employees of Stellantis, FCA US LLC,

8   regarding the engines used in the Subject Vehicles and regarding the Subject

9   Vehicles.  Cummins, either directly or through its predecessors and agents, has

10  regularly submitted information to CARB, including applications for Executive

11  Orders.  Cummins has also regularly participated in meetings with CARB,

12  including in person, via telephone, or through videoconferencing technology,

13  including in connection with applications for Executive Orders.  Cummins has also

14  regularly corresponded or otherwise communicated with CARB, including in

15  connection with applications for Executive Orders.

16      19.   The violations of law alleged in this Complaint occurred throughout

17  the State of California.

18   **BACKGROUND AND FACTUAL ALLEGATIONS**

19  **I.   VEHICLE EMISSIONS POSE A SIGNIFICANT AIR POLLUTION CHALLENGE
         IN CALIFORNIA**

20

21      20.   California has a long history of severe air pollution.  In simplest

22  terms, California has tens of millions of residents, many of whom travel by

23  automobile, and they are often concentrated in large, urban areas surrounded by

24  mountains.  This topography traps vehicle emissions containing harmful air

25  pollutants, including NOx, and the pollutants in the emissions further react with

26  other pollutants and California's abundant sunlight to create ozone ("smog"),

27  creating a serious air quality problem that is harmful to human health, property, and

28  the environment.  NOx emissions in California are a key contributor to ambient

1    ozone and fine particulate matter pollution, which are associated with premature

2    deaths, increased hospitalizations, emergency room visits due to exacerbation of

3    chronic heart and lung diseases, and other serious health effects.  A major

4    contributor to NOx emissions is combustion from diesel engines and vehicles, such

5    as the Subject Vehicles at issue in this Complaint.

6        21.    The emission of air pollutants from motor vehicles is a primary cause

7    of air pollution in many parts of California, and the control and elimination of those

8    air pollutants is of prime importance for the protection and preservation of the

9    public health, property, and the environment.

10       22.    California has long been at the forefront of researching, investigating,

11   monitoring, and regulating sources of air pollution, including automobile tailpipe

12   emissions.  Beginning in the late 1950s and early 1960s, California enacted the

13   nation's first vehicle emission standards and regulations.  In 1971, California

14   enacted the country's first automobile NOx standards.

15       23.    CARB was formed in 1967 and is charged with setting and

16   implementing vehicle emissions standards in California.  California regulated

17   vehicle emissions before the United States Congress passed the CAA in 1970, and

18   that statute provides that California is the only state permitted to obtain a waiver

19   from the federal government to adopt and enforce its own emission standards that

20   meet or exceed federal standards.  42 U.S.C. § 7543(b).  California obtained such a

21   waiver and retained its authority to adopt and enforce its own emission standards,

22   including those at issue in this action.

23       24.    Despite the State of California's efforts to combat air pollution over

24   the past half century, many regions of California continue to suffer from some of

25   the worst air quality in the nation.  For example, the Central Valley and Los

26   Angeles air basins remain out of attainment with federal health-based ambient air

27   quality standards that target NOx, particulate matter, and ozone, among other

28   pollutants.  These pollutants negatively affect public health and welfare across a

8

COMPLAINT – PEOPLE OF THE STATE OF CALIFORNIA v. CUMMINS INC.

broad demographic spectrum.  California has gone to great lengths to combat air pollution, and it has devoted significant state resources over decades to the effort.

## II.   CALIFORNIA'S REGULATION OF VEHICLE EMISSIONS

25.     Under its unique, retained authority, CARB has continued to set strict emissions standards and test procedures for vehicles imported, offered for sale, or sold in California.  CARB has a special interest in assuring that only those new motor vehicles that meet the state's stringent emission standards and test procedures are sold, used, or registered in the state.

26.     California Health and Safety Code § 43102 specifies that no new motor vehicle or engine can be certified by CARB unless it meets the emission standards adopted by CARB under the test procedures adopted by CARB.  Section 43106 requires that each new motor vehicle or engine required to meet the emission standards shall be, in all material respects, substantially the same in construction as the test motor vehicle or engine, as the case may be, that has been certified by CARB.  Section 43150 declares that "only those new motor vehicles and new motor vehicle engines which meet this state's stringent emission standards and test procedures, and which have been certified pursuant to this chapter, are used or registered in this state."  The Subject Vehicles were certified to either the Low Emission Vehicle II ("LEV II") standard or the Low Emission Vehicle III ("LEV III") standard.  The relevant "LEV II" standards are set forth in Cal. Code Regs., tit. 13, § 1961, the relevant "LEV III" standards are set forth in Cal. Code Regs., tit. 13, § 1961.2, and test procedures for the Subject Vehicles also are incorporated by reference in Cal. Code Regs., tit. 13, §§ 1961 and 1961.2.

27.     For model year 2001 through 2014 vehicles, Cal. Code Regs., tit. 13, § 1961(d) contains the certification requirements and incorporates by reference the following test procedures: "California 2001 through 2014 Model Criteria Pollutant Exhaust Emission Standards and Test Procedures and 2009 through 2016 Model Greenhouse Gas Exhaust Emission Standards and Test Procedures for Passenger

9

Cars, Light-Duty Trucks, and Medium-Duty Vehicles" ("2001-2014 Test Procedures"). The 2001-2014 Test Procedures require manufacturers to, among other things, list all AECDs installed on their vehicles, including a justification for each AECD, the parameters the AECDs sense and control, a detailed justification of each AECD that results in a reduction in effectiveness of the emission control system, and a rationale for why the AECD is not a defeat device. The 2001-2014 Test Procedures, and 40 C.F.R. §§ 86.1809-01, 86.1809-10, and 86.1809-12, 40 C.F.R. § 86.1803-01, 40 C.F.R. § 86.1842-01, and 40 C.F.R. § 86.1844-01 as incorporated in those Test Procedures, prohibit the use of a defeat device in any new vehicles subject to the test procedures as well as require manufacturers to disclose AECDs and submit running changes and field fixes, respectively. Running changes and field fixes are changes to the engines that occurs after certification.

28.     For model year 2015 and later vehicles, Cal. Code Regs., tit. 13, § 1961.2(d) contains the certification requirements and incorporates by reference the following test procedures: "California 2015 through 2025 Model Year Criteria Pollutant Exhaust Emission Standards and Test Procedures and 2017 and Subsequent Model Greenhouse Gas Exhaust Emission Standards and Test Procedures for Passenger Cars, Light-Duty Trucks, and Medium-Duty Vehicles" ("2015-2025 Test Procedures"). The 2015-2025 Test Procedures require manufacturers to, among other things, list all AECDs installed on their vehicles, including a justification for each AECD, and a rationale for why the AECD is not a defeat device as well as submit running changes/field fixes for changes made post issuance of the Executive Order. The 2015-2025 Test Procedures, and 40 C.F.R. §§ 86.1809-01, 86.1809-10, and 86.1809-12, 40 C.F.R. § 86.1803-01, 40 C.F.R. § 86.1842-01, and 40 C.F.R. § 86.1844-01 as incorporated in those Test Procedures, prohibit the use of a defeat device in any new vehicles subject to the test procedures as well as require manufacturers to disclose AECDs and submit running changes and field fixes, respectively.

29.     California law requires that each make and model year of vehicle comply with California's emissions standards and be certified by CARB before being imported, delivered, purchased, acquired, received, offered, rented, leased, or sold for use, registration, or resale in California.

30.     California Health and Safety Code § 43151 generally prohibit importing, delivering, selling, or leasing new motor vehicles or motor vehicle engines for use, registration, or resale in California, or attempting or assisting in any of the above such acts, unless such motor vehicles or engines have been certified by CARB and comply with California's emissions standards and other requirements.

31.     CARB administers a certification program designed to prevent the introduction of new motor vehicles and motor vehicle engines into California that do not satisfy applicable emission standards.  Under this program, CARB reviews applications submitted for new motor vehicles and certifies them by issuing Executive Orders.

32.     To obtain an Executive Order, a manufacturer must submit an application to CARB for each model year and for each test group of vehicles that it intends to import, deliver, purchase, rent, lease, acquire, receive, or sell in California.  Manufacturers are prohibited from taking any of these actions unless such motor vehicles have been certified through an Executive Order issued by CARB.

33.     To be certified, a vehicle manufacturer must demonstrate that each vehicle's exhaust and evaporative emission control systems are durable and will comply with the applicable emission and evaporative emission standards for the vehicle's useful life.  The manufacturer demonstrates this through durability and certification testing of sample vehicles.  This certification process is comprehensive—CARB evaluates compliance with numerous requirements in

11

COMPLAINT – PEOPLE OF THE STATE OF CALIFORNIA v. CUMMINS INC.

1    addition to tail-pipe emissions, including regulations for on-board diagnostic, anti-

2    tampering, labeling, and warranties.

3        34.    CARB's certification requirements and test procedures require,

4    among other things, that an automobile manufacturer disclose in its certification

5    applications all AECDs present in the vehicle.  As defined in 40 C.F.R. § 86.1803-

6    01 and incorporated into California law, an AECD is "any element of design that

7    senses temperature, vehicle speed, engine revolutions per minute (RPM),

8    transmission gear, manifold vacuum, or any other parameter for the purpose of

9    activating, modulating, delaying, or deactivating the operation of any part of the

10   emission control system."  All AECDs must be disclosed so that CARB may

11   properly evaluate them for, among other things, their effect on emissions, their

12   purpose, and their effect on vehicle components and durability.

13       35.    CARB's certification requirements and test procedures also prohibit

14   the use of defeat devices.  As defined in 40 C.F.R. § 86.1803-01 and incorporated

15   into California law, a defeat device is an AECD that reduces the effectiveness of the

16   emission control system under conditions that may reasonably be expected to be

17   encountered during normal vehicle operation and use and does not meet one of four

18   exceptions set forth in the regulations.  Vehicles equipped with defeat devices will

19   not be certified.

20       36.    CARB's certification requirements and test procedures require an on-

21   board diagnostic system that meets regulatory requirements, is designed to test that

22   the emissions control system is working properly, and, when a malfunction is

23   detected, alerts owners via a "check engine" light of needed service and informs

24   mechanics of the cause of the malfunction.  In California, most newer cars (model

25   year 2000 and newer) no longer require tailpipe testing during smog checks; these

26   cars are now simply connected to an on-board diagnostic scanner to detect

27   malfunctions.  Because of this reliance on on-board diagnostic scans to detect

28   problems, if the on-board diagnostic system is not operating properly (or was not

12

COMPLAINT – PEOPLE OF THE STATE OF CALIFORNIA v. CUMMINS INC.

designed to operate properly), the vehicles may pass smog checks even if the emissions control system is malfunctioning.

37.     The on-board diagnostic regulations permit CARB to certify vehicles even though the vehicles do not fully comply with one or more of the requirements set forth in the on-board diagnostic regulations, unless the deficiency would make the vehicle subject to an ordered recall.  See Cal. Code Regs., tit. 13, § 1968.2(k). As set out in the regulations, among other things, CARB considers the extent to which the on-board diagnostic requirements are satisfied, and the manufacturer must demonstrate a good faith effort to meet the on-board diagnostic requirements in full and come into compliance as expeditiously as possible.  The regulations require manufacturers to pay fines on a per deficiency, per vehicle basis for each deficiency in excess of two granted by CARB at the time of certification.

**III.   DEFENDANT INCORPORATED AECDS AND DEFEAT DEVICES INTO THE SUBJECT VEHICLES' ENGINES AND FAILED TO DISCLOSE THEM TO CARB**

**A.    Design and Manufacture of the Subject Vehicles**

38.     While diesel engines have the potential to offer certain benefits over comparably sized gasoline engines—for example, better fuel economy and increased power—the combustion process leads to greater production of NOx. Automobile manufacturers use various strategies to reduce NOx tailpipe emissions in diesel engine vehicles.

39.     The Subject Vehicles incorporate two primary NOx reduction strategies:

a.    **Exhaust Gas Recirculation ("EGR").**  Through this process, a portion of the exhaust gas (which has lower oxygen content) is fed back into the combustion chamber, lowering the combustion temperature inside the cylinder. This reduces the rate of NOx formation, but it can also increase the level of particulate matter produced by the combustion.

13

b. **Selective Catalytic Reduction ("SCR")**.  SCR uses an aqueous urea solution, also known as diesel exhaust fluid ("DEF"), as a reducing agent.  The fluid is stored in a separate tank in the vehicle that requires periodic refilling.  The DEF reacts in the exhaust to produce ammonia and carbon dioxide.  The NOx reacts with ammonia to yield nitrogen and water.  SCR is an example of an after-treatment system, which treats exhaust gas after combustion but before release into the environment from the tailpipe.

40.     Like most modern vehicles, the Subject Vehicles also contain an electronic engine control unit ("ECU") and transmission control unit ("TCU").  The ECU processes numerous data inputs and coordinates and controls the engine and emissions systems.  ECUs are essentially computers, sometimes described as the "brains" of the vehicle.  The software that runs on the ECU includes numerous variables that can be set by the manufacturer through a process known as calibration.  These calibrated variables include thresholds and enabling and disabling conditions, many of which alter the way that the engine, emissions control system, and on-board diagnostic system operate.  The collection of all of the settings for each of the software variables is known as a calibration.

41.     ECU software that senses inputs like ambient temperature, motive speed, engine revolutions per minute, transmission gear, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system is an AECD.  The ECU software in the Subject Vehicles incorporates various AECDs.  As described below, Defendant did not disclose some of these AECDs to CARB at all, and even when Defendant disclosed the existence of the AECDs or certain information about them, Defendant did not disclose them fully and accurately.

42.     During regulated emission testing cycles, the ECU software and calibrations installed on the Subject Vehicles (including AECDs) operate the engine

14

COMPLAINT – PEOPLE OF THE STATE OF CALIFORNIA v. CUMMINS INC.

and emission control systems—including the EGR and SCR processes—in such a way that emissions appear to be compliant with CARB's regulatory standards.

43.     In conditions outside of the regulated emission testing cycles, however, the ECU software and calibrations installed on the Subject Vehicles (including AECDs) operate in such a way that the effectiveness of the emission control system is reduced—that is, the engine and after-treatment systems operate in a way that produces increased NOx emissions.  The extent of the increase depends on various factors, including the particular Subject Vehicle and the driving conditions.

44.     Defendant developed the ECUs and ECU software for the Subject Vehicles and manufactured the engines and exhaust systems that were placed in the Subject Vehicles.

45.     The Subject Vehicles are identified in the table below:

| Model Year | Model | Test Group |
|---|---|---|
| 2013 | RAM 2500 & RAM 3500 | DCEXD06.78VV |
| 2013 | RAM 3500 | DCEXD06.78WV |
| 2014 | RAM 2500 & RAM 3500 | ECEXD06.78VV |
| 2014 | RAM 3500 | ECEXD06.78WV |
| 2015 | RAM 2500 & RAM 3500 | FCEXD06.78VV |
| 2015 | RAM 3500 | FCEXD06.78WV |
| 2016 | RAM 2500 & RAM 3500 | GCEXD06.78VV |
| 2016 | RAM 3500 | GCEXD06.78WV |
| 2017 | RAM 2500 & RAM 3500 | HCEXD06.78VV |
| 2017 | RAM 3500 | HCEXD06.78WV |
| 2018 | RAM 2500 & RAM 3500 | JCEXD06.78VV |

| 2018 | RAM 3500 | JCEXD06.78WV |
|------|----------|--------------|
| 2019 | RAM 2500 | KCEXD06.78VV (Software Calibration 1) |
| 2019 | RAM 3500 | KCEXD06.78WV (Software Calibration 1) |
| 2019 | RAM 2500 | KCEXD06.78VV (Software Calibration 3) |
| 2019 | RAM 3500 | KCEXD06.78WV (Software Calibration 3) |
| 2020 | RAM 2500 | LCEXD06.78VV |
| 2020 | RAM 3500 | LCEXD06.78WV |
| 2021 | RAM 2500 | MCEXD06.78VV |
| 2021 | RAM 3500 | MCEXD06.78WV |
| 2022 | RAM 2500 | NCEXD06.78VV |
| 2022 | RAM 3500 | NCEXD06.78WV |
| 2023 | RAM 2500 | PCEXD06.78VV |
| 2023 | RAM 3500 | PCEXD06.78WV |

**B.    The Applications for Executive Orders Submitted to CARB Failed to Disclose or Failed to Adequately Disclose AECDs**

46.    To apply for Executive Orders from CARB, Cummins submitted applications and supporting materials to CARB and communicated with CARB regarding the Subject Vehicles.

47.    Cummins employees or managers were involved with creating or approving the submissions to CARB.

48.    Among other things, the application materials submitted by Cummins identified certain AECDs and provided some information on those AECDs.

16

1  Additional AECDs, however, were either not disclosed to CARB, or, if the AECDs

2  or parts of the AECDs were disclosed, they were not disclosed fully and accurately.

3      49.    These undisclosed AECDs—operating alone or in combination with

4  each other—detrimentally affect the emission control system of the Subject

5  Vehicles.

6      50.    One or more of the AECDs in the Subject Vehicles qualify as "defeat

7  devices" in violation of California law, either operating alone or in combination

8  with each other: they reduce the effectiveness of the Subject Vehicles' emission

9  control systems and cause the vehicles to emit increased NOx under certain real

10  world driving conditions other than those encountered during regulatory emission

11  tests.

12      51.    Each of the respective applications for certification submitted to

13  CARB by Defendant for the Subject Vehicles contained material omissions related

14  to these AECDs.

15      52.    Each of the respective applications for certification submitted to

16  CARB by Defendant for the Subject Vehicles contained material omissions related

17  to the vehicles' on-board diagnostic systems.

18      53.    The emissions compliance data and on-board diagnostic durability

19  demonstration data submitted to CARB by Defendant in connection with each

20  application for certification contained material omissions, and the emissions testing

21  was not completed according to CARB requirements, because, among other

22  reasons, the data were generated using undisclosed AECDs and defeat devices and

23  were not representative of the Subject Vehicles' performance under normal

24  operating conditions.

25      54.    Part of the CARB certification process involves signing a "statement

26  of compliance" with applicable standards for each certification application.

27  Defendant knew, or should have known, that its statements of compliance in each

28  of their applications for certification were inadequate regarding their compliance

17

COMPLAINT – PEOPLE OF THE STATE OF CALIFORNIA v. CUMMINS INC.

with California and federal emissions laws and regulations, because, among other reasons, each statement of compliance related to a certification application that failed to disclose AECDs and defeat devices, on-board diagnostic system non-conformities, and emissions standard failures.

55.     Defendant's material omissions submitted to CARB allowed the Subject Vehicles to be certified for sale and lease in California despite their non-compliance with California law.

56.     CARB relied on the accuracy of Defendant's statements and the information presented in connection with their applications for certification of the Subject Vehicles when CARB issued Executive Orders certifying the Subject Vehicles for import, offer for sale, sale, and lease in California.

57.     The Subject Vehicles manufactured and sold or leased in California did not conform in all material respects with the vehicle descriptions in Defendant's applications for certification.

## IV.   EXCESS POLLUTION FROM THE SUBJECT VEHICLES HARMS THE ENVIRONMENT AND PUBLIC HEALTH

58.     The Subject Vehicles have emitted and continue to emit NOx emissions several times the CARB-compliant levels, depending on vehicle type, vehicle loads, and driving conditions (e.g., city or highway).

59.     The excess NOx emissions from the Subject Vehicles equipped with undisclosed AECDs and defeat devices have caused and are causing significant damage to the State of California, including to the health of its residents and its natural resources.

60.     NOx is a highly reactive gas that is a major contributor to two other air pollutants, particulate matter and ozone.  NOx emissions, and the particulate matter and ozone pollution to which NOx contributes, are among the most regulated air pollutants in the United States and California due to the large effect these pollutants have on public health and the environment.

61.     Diesel particulate matter has scientifically demonstrated negative effects on public health and welfare and has been identified as a toxic air contaminant.  A strong and broad body of evidence links inhalation of particulate matter pollution, of which diesel particulate matter is part, with premature death, respiratory illnesses, and heart disease.

62.     In the short term, NOx and particulate matter have been found by scientific studies in California and elsewhere to reduce lung function and exacerbate the symptoms of asthmatics.  Long term, chronic conditions such as reduced lung function, asthma, and chronic obstructive pulmonary disease are among the many adverse effects of these air pollutants.  Particulate matter can also impair visibility and damage vegetation.

63.     Ozone is the prime precursor to smog.  EPA analyses have found that short term exposure to ozone "induced (or [was] associated with) statistically significant declines in lung function." Such short term exposure results in increases in asthma medication use in children, emergency room visits, and hospital admissions for respiratory conditions, and is a likely cause of a range of other health and mortality issues.

64.     An EPA analysis of ozone in 2013 found that "strong evidence" exists that ozone concentrations impair many native plants and trees by injuring foliage, decreasing growth and biomass accumulation in annual, perennial, and woody plants (including agronomic crops, annuals, shrubs, grasses, and trees), and decreasing the yield and/or nutritive quality in a large number of agronomic and forage crops.

**FIRST CAUSE OF ACTION**
**(Clean Air Act of 1970, 42 U.S.C. § 7604)**
**[By CARB on Behalf of the People of the State of California]**

65.     California Plaintiff incorporates and realleges paragraphs 1 through 64, inclusive, as if set forth here in full.

19

COMPLAINT – PEOPLE OF THE STATE OF CALIFORNIA v. CUMMINS INC.

66.     Under the CAA, California is uniquely authorized to seek a waiver of preemption to enforce its own air pollution standards. 42 U.S.C. § 7543(b).

67.     Pursuant to the CAA, California adopted Cal. Code Regs., tit. 13, § 1961 and requested and obtained waivers of preemption from EPA to enforce that section, which establishes exhaust emission standards and test procedures for certain 2004 through 2019 model year vehicles. 68 Fed. Reg. 19811-01 (April 22, 2003); 70 Fed. Reg. 22034-02 (April 28, 2005); 75 Fed. Reg. 44948-01 (July 30, 2010).

68.     Additionally, effective July 18, 2016, EPA approved Cal. Code Regs., tit. 13, § 1961 as part of a revision to the California State Implementation Plan ("SIP"). 40 C.F.R. § 52.220a; 81 Fed. Reg. 39424-01 (June 16, 2016).

69.     Pursuant to the CAA, California also requested and obtained waivers of preemption to enforce Cal. Code Regs., tit. 13, § 1961.2, which establishes exhaust emission standards and test procedures for certain 2015 through 2025 model year vehicles.  78 Fed. Reg. 2112-01 (January 19, 2013).

70.     Additionally, effective July 18, 2016, EPA approved Cal. Code Regs., tit. 13, § 1961.2 as part of a revision to California's SIP.  40 C.F.R. § 52.220a; 81 Fed. Reg. 39424-01 (June 16, 2016).

71.     The Subject Vehicles identified in paragraph 45 above are subject to either the "LEV II" or the "LEV III" standards, as reflected in the applications for certification submitted by Defendant and the corresponding Executive Orders issued by CARB.

72.     The CAA's citizen suit provision, 42 U.S.C. § 7604(a), provides that "any person may commence a civil action on his own behalf (1) against any person . . . who is alleged to have violated . . . or to be in violation of (A) an emission standard or limitation . . . or (B) an order issued by the Administrator or a State with respect to such a standard or limitation."  Plaintiff is considered a "person" for purposes of the citizen suit provision.  42 U.S.C. § 7602(e).

73.     Defendant sold, attempted to sell, or caused to be offered for sale in California Subject Vehicles that failed to comply with either the "LEV II" emissions standards set forth in Cal. Code Regs., tit. 13, § 1961 or the "LEV III" emissions standards set forth in Cal. Code Regs., tit. 13, § 1961.2, when sold, and those vehicles remain out of compliance with those standards.  Because the "LEV II" and "LEV III" standards have been approved as part of California's SIP, Defendant's actions constitute multiple violations of an "emission standard or limitation" within the meaning of 42 U.S.C. § 7604(a)(1).

74.     Plaintiff complied with the requirement that it provide Defendant and EPA with notice of Defendant's violations under the CAA in accordance with 42 U.S.C. § 7604(b) and 40 C.F.R. § 54.3(b).

### SECOND CAUSE OF ACTION
**(Cal. Health & Safety Code § 43151)**
**[By CARB on Behalf of the People of the State of California]**

75.     California Plaintiff incorporates and realleges paragraphs 1 through 64, inclusive, as if set forth here in full.

76.     Before January 1, 2017, California Health and Safety Code § 43151(a) was a strict liability statute, stating: "No person who is a resident of, or who operates an established place of business within, this state shall import, deliver, purchase, rent, lease, acquire, or receive a new motor vehicle, new motor vehicle engine, or motor vehicle with a new motor vehicle engine for use, registration, or resale in this state unless such motor vehicle engine or motor vehicle has been certified pursuant to this chapter.  No person shall attempt or assist in any such action."[4]

---

[4] As reflected in this Cause of Action, the text of California Health and Safety Code § 43151 was amended with an effective date of January 1, 2017.  See 2016 Cal. Legis. Serv. Ch. 604 (A.B. 1685, "AIR POLLUTION—MOTOR VEHICLES—FINES AND PENALTIES").

77.     At all relevant times, Defendant operated several established places of business in California, including facilities in San Leandro and Downey, California.

78.     Before January 1, 2017, Defendant imported, delivered, purchased, rented, leased, acquired, and/or received new engines subsequently installed in the Subject Vehicles identified in paragraph 45 for intended use, registration, or resale in California, and/or attempted or assisted in such actions.  The Subject Vehicles, as manufactured, are not certified in compliance with California law because they do not conform in all material respects to the design specifications described in the applications for certification that purportedly cover them, including that they (a) contain AECDs that were not disclosed or inadequately disclosed in the applications; (b) contain defeat devices; and/or (c) as a result of the AECDs that were not disclosed or inadequately disclosed in the applications, and or defeat devices, the Subject Vehicles contain undisclosed or unapproved on-board diagnostic non-compliances, or on-board diagnostic non-compliances for which CARB granted deficiencies at the time of certification based on inaccurate or incomplete information submitted by Defendant.

79.     Defendant's actions before January 1, 2017, constitute multiple violations of California Health and Safety Code § 43151.

80.     As of January 1, 2017, California Health and Safety Code § 43151(a) is a strict liability statute that states: "A person shall not offer for sale, introduce into commerce, import, deliver, purchase, rent, lease, acquire, or receive a new motor vehicle, new motor vehicle engine, or motor vehicle with a new motor vehicle engine for use, registration, or resale in this state unless the motor vehicle engine or motor vehicle has been certified pursuant to this chapter.  A person shall not attempt or assist in any such action."

81.     On or after January 1, 2017, Defendant offered for sale, introduced into commerce, imported, delivered, purchased, rented, leased, acquired, and/or received new engines subsequently installed in the Subject Vehicles identified in

1    paragraph 45 for intended use, registration, or resale in California, and/or attempted

2    or assisted in such actions.  The Subject Vehicles, as manufactured, are not certified

3    in compliance with California law because they do not conform in all material

4    respects to the design specifications described in the applications for certification

5    that purportedly cover them, including that they (a) contain AECDs that were not

6    disclosed or inadequately disclosed in the applications; (b) contain defeat devices;

7    and/or (c) as a result of the AECDs that were not disclosed or inadequately

8    disclosed in the applications, and or defeat devices, the Subject Vehicles contain

9    undisclosed or unapproved on-board diagnostic non-compliances, or on-board

10    diagnostic non-compliances for which CARB granted deficiencies at the time of

11    certification based on inaccurate or incomplete information submitted by

12    Defendant.

13       82.    Defendant's actions on or after January 1, 2017, constitute multiple

14    violations of California Health and Safety Code § 43151.

### THIRD CAUSE OF ACTION
**(Cal. Health & Safety Code § 43008.6; Cal. Veh. Code § 27156)**
**[By CARB on Behalf of the People of the State of California]**

18       83.    California Plaintiff incorporates and realleges paragraphs 1 through

19    64, inclusive, as if set forth here in full.

20       84.    California Vehicle Code § 27156 states, in relevant part, that no

21    person shall "install, sell, offer for sale, or advertise any device, apparatus, or

22    mechanism intended for use with, or as a part of, a required motor vehicle pollution

23    control device or system that alters or modifies the original design or performance

24    of the motor vehicle pollution control device or system."

25       85.    Section 27156 also states that if the Court finds that a person has

26    willfully violated this section, it "shall impose the maximum fine that may be

27    imposed in the case, and no part of the fine may be suspended."

28

23

COMPLAINT – PEOPLE OF THE STATE OF CALIFORNIA v. CUMMINS INC.

86.    "Willfully" "implies simply a purpose or willingness to commit the act, or make the omission referred to." Cal. Veh. Code § 27156.

87.    The Subject Vehicles contain undisclosed or unapproved running changes or field fixes that alter or modify the original design or performance of the motor vehicle pollution control device or system.

88.    Defendant's actions constitute multiple willful violations of California Vehicle Code § 27156.

### FOURTH CAUSE OF ACTION
**(Cal. Health & Safety Code § 43016, 43211; Cal. Code Regs., tit. 13, §§ 1961, 1961.2 [Sale of Motor Vehicles that Fail to Meet Applicable Emission Standards])**
**[By CARB on Behalf of the People of the State of California]**

89.    California Plaintiff incorporates and realleges paragraphs 1 through 64, inclusive, as if set forth here in full.

90.    California Health and Safety Code § 43211 is a strict liability statute which states that any manufacturer who sells, attempts to sell, or causes to be offered for sale in California a new motor vehicle that fails to meet the applicable emission standards shall be subject to a civil penalty for each such action.[5]

91.    Cal. Code Regs., tit. 13, § 1961 sets forth specific "LEV II" exhaust emission standards for 2004 through 2019 model year medium-duty trucks and Cal. Code Regs., tit. 13, § 1961.2 sets forth specific "LEV III" exhaust emission standards for 2015 through 2025 model year medium-duty trucks.  The Subject Vehicles identified in paragraph 45 above are subject to either the "LEV II" or "LEV III" exhaust emission standards.

---

[5] Section 43211 was amended, effective January 1, 2017, to increase the penalty from $5,000 for each such action to up to $37,500 for each such action.  See 2016 Cal. Legis. Serv. Ch. 604 (A.B. 1685, "AIR POLLUTION—MOTOR VEHICLES—FINES AND PENALTIES").

92.     Defendant has caused to be offered for sale in California approximately 97,806 Subject Vehicles that fail to meet the applicable emission standards.

93.     Defendant's actions constitute multiple violations of California Health and Safety Code § 43211.

**FIFTH CAUSE OF ACTION**
**(Cal. Health & Safety Code §§ 43016, 43212; Cal. Code Regs., tit. 13, §§ 1961, 1961.2 [Failure to Comply with Applicable Test Procedures])**
**[By CARB on Behalf of the People of the State of California]**

94.     California Plaintiff incorporates and realleges paragraphs 1 through 64, inclusive, as if set forth here in full.

95.     California Health and Safety Code § 43212 is a strict liability statute which states, in relevant part, that a manufacturer or distributor who does not comply with the test procedures adopted by CARB shall be subject to a civil penalty for each vehicle that does not comply with the test procedures and which is first sold in California.[6]

96.     Cal. Code Regs., tit. 13, § 1961 sets forth the test procedures for determining compliance with emission standards for the Model Year 2013 and 2014 Subject Vehicles.

97.     Cal. Code Regs., tit. 13, § 1961.2 sets forth the test procedures for determining compliance with emission standards for Model Year 2015 through 2023 Subject Vehicles.

98.     Among other things, the test procedures require manufacturers to conduct one durability demonstration for each durability group (40 C.F.R. § 86.1823-08).  The configuration of the durability data vehicle is determined according to the provisions of 40 C.F.R. § 86.1822–01 (40 C.F.R. § 86.1829-01(a)).

---

[6] Section 43212 was amended, effective January 1, 2017, to increase the penalty from $50 per vehicle to up to $37,500 per vehicle.  See 2016 Cal. Legis. Serv. Ch. 604 (A.B. 1685, "AIR POLLUTION—MOTOR VEHICLES—FINES AND PENALTIES").

Section 86.1822-01 requires the manufacturer to select the durability data vehicle configuration that is expected to generate the highest level of exhaust emission deterioration as the durability data vehicle for each durability group.  Because of the presence of undisclosed AECDs and/or defeat devices, the durability data vehicles selected by Defendant were not the vehicle configurations expected to generate the highest level of exhaust emission deterioration.

99.    The test procedures also require manufacturers to conduct exhaust emissions testing on emissions data vehicles for each test group (40 C.F.R. § 86.1829-15(b)).  Within each test group, the manufacturer must select the emissions data vehicle configuration that is expected to be worst-case for exhaust emission compliance on candidate in-use vehicles (40 C.F.R. § 86.1828-01(a)).  Because of the presence of undisclosed AECDs and/or defeat devices, the emissions data vehicles selected by Defendant were not the vehicle configurations expected to be worst-case for exhaust emissions compliance on candidate in-use vehicles.

100.    Defendant's actions failed to comply with CARB's test procedure regulations and constitute multiple violations of California Health and Safety Code § 43212.

### SIXTH CAUSE OF ACTION
**(Cal. Health & Safety Code § 43016; Cal. Code Regs., tit. 13, § 1968.2
[Violation of Malfunction and Diagnostic System Requirements])
[By CARB on Behalf of the People of the State of California]**

101.    California Plaintiff incorporates and realleges paragraphs 1 through 64, inclusive, as if set forth here in full.

102.    California law specifies on-board diagnostic system requirements for vehicles certified for sale in California.  Specifically, Cal. Code Regs., tit. 13, § 1968.2 (Malfunction and Diagnostic System Requirements) requires that model year 2004 and subsequent model year passenger cars, light-duty trucks, and medium-duty vehicles and engines certified for sale in California be equipped with on-board diagnostic systems, and states that the on-board diagnostic systems shall

26

monitor emissions systems in-use for the actual life of the vehicle, and shall be capable of detecting malfunctions of those emissions systems and illuminating a malfunction indicator light to notify the vehicle operator if and when emissions exceed certain designated levels.

103.    Defendant violated Cal. Code Regs., tit. 13, § 1968.2 with regard to the Subject Vehicles identified in paragraph 45 above because the on-board diagnostic systems installed in those vehicles did not effectively monitor the emissions systems.  Due to the operation of the undisclosed AECDs and/or defeat devices, the on-board diagnostic systems in those vehicles were not capable of detecting and notifying the vehicle operators if and when emissions exceeded the designated levels as demonstrated on the emission test cycles Defendant submitted in its on-board diagnostic certification applications.  Additionally, the Subject Vehicles contain undisclosed or unapproved on-board diagnostic non-compliances, or on-board diagnostic non-compliances for which CARB granted deficiencies at the time of certification based on inaccurate or incomplete information submitted by Defendant.

104.    California Health and Safety Code § 43016 is a strict liability statute which provides that any person who violates any provision of Division 26, Part 5 (Cal. Health & Safety Code §§ 43000-44299.91, Vehicular Air Pollution Control), or any order, rule, or regulation of CARB adopted pursuant to Part 5, and for which violation there is not provided in Part 5 any other specific civil penalty or fine, shall be subject to a civil penalty.[7]  California Health and Safety Code § 43016 applies to any violation of Division 26, Part 5 (Cal. Health & Safety Code §§ 43000-

---

[7] California Health and Safety Code § 43016 was amended, effective January 1, 2017, to increase the penalty from a maximum of $500 per vehicle to a maximum of $37,500 for each such action.  See 2016 Cal. Legis. Serv. Ch. 604 (A.B. 1685, "AIR POLLUTION—MOTOR VEHICLES—FINES AND PENALTIES").  Under Health and Safety Code § 43016(a)(2), the maximum amount is adjusted annually for inflation based on the California Consumer Price Index.  As of the date of filing, the maximum penalty is $45,563 for each such action.

44299.91, Vehicular Air Pollution Control), and any violation of any order, rule, or regulation of CARB adopted pursuant to Part 5.

105.     Defendant's actions violated Cal. Code Regs., tit. 13, § 1968.2 and constitute multiple violations of California Health and Safety Code § 43016.

### SEVENTH CAUSE OF ACTION
**(Cal. Health & Safety Code § 43016; Cal. Code Regs., tit. 13, § 1965**
**[Violation of Emission Control and Smog Label Requirements])**
**[By CARB on Behalf of the People of the State of California]**

106.     California Plaintiff incorporates and realleges paragraphs 1 through 64, inclusive, as if set forth here in full.

107.     California law requires certain emission control labels as part of the California certification procedures.  For model year 2013 and 2014 vehicles, 13 C.C.R. § 1965 requires emission control labels as specified in the 2001-2014 Test Procedures.  The 2001-2014 Test Procedures require a statement indicating that the vehicle conforms to applicable California regulations.  For model year 2015 through 2023 vehicles, Cal. Code Regs., tit. 13, 1965 requires emission control labels as specified in the 2015-2025 Test Procedures.  The 2015-2025 Test Procedures require a statement indicating that the vehicle conforms to applicable California regulations.  However, placement of such a statement on vehicles which, in fact, do not comply with all applicable California regulations, is prohibited.

108.     Defendant placed a statement on each of the Subject Vehicles representing that the vehicle conforms to applicable California regulations, but the Subject Vehicles did not in fact conform to the regulations as described in this Complaint.

109.     California's emissions labeling requirements set out in Cal. Code Regs., tit. 13, § 1965 also require that all certified new passenger cars must bear a label reflecting the "smog index."  For model year 2009 through 2023 vehicles, Cal. Code Regs., tit. 13, § 1965 requires smog index labeling to conform with the requirements in the "California Environmental Performance Label Specifications

28

for 2009 and Subsequent Model Year Passenger Cars, Light-Duty Trucks, and Medium-Duty Passenger Vehicles" ("2009 Smog Label Specifications").  The 2009 Smog Label Specifications prohibit the sale of any model year 2009 and subsequent model year vehicles with an incorrect smog index label.

110.   Defendant reported smog indices or smog scores for the Subject Vehicles that did not accurately reflect the level of emissions of smog-forming pollutants from those vehicles.  Instead, the operation of the undisclosed AECDs and/or defeat devices resulted in emissions in excess of the levels associated with the reported smog indices or smog scores.

111.   California Health and Safety Code § 43016 is a strict liability statute which provides that any person who violates any provision of Division 26, Part 5 (Cal. Health & Safety Code §§ 43000-44299.91, Vehicular Air Pollution Control), or any order, rule, or regulation of CARB adopted pursuant to Part 5, and for which violation there is not provided in Part 5 any other specific civil penalty or fine, shall be subject to a civil penalty.  Part 5 does not specify a civil penalty or fine for violations of the labeling requirements set forth in Cal. Code Regs., tit. 13, § 1965.

112.   Defendant's actions violated Cal. Code Regs., tit. 13, § 1965 and constitute multiple violations of California Health and Safety Code § 43016.

**EIGHTH CAUSE OF ACTION**
**(Cal. Health & Safety Code §§ 43016, 43106; Cal. Code Regs., tit. 13 §§ 1961, 1961.2) [Failure to Report Running Changes])**
**[By CARB on Behalf of the People of the State of California]**

113.   California Plaintiff incorporates and realleges paragraphs 1 through 64, inclusive, as if set forth here in full.

114.   California Health & Safety Code § 43106 generally requires that each new motor vehicle or motor vehicle engine required to meet emission standards adopted by CARB pursuant to California Health & Safety Code § 43101 shall be, in all material respects, substantially the same in construction as the test motor vehicle or motor vehicle engine which was certified by CARB, and provides that a

29

manufacturer may make changes with respect to previously-certified motor vehicles or motor vehicle engines only if such changes do not increase emissions above the applicable standards and are "made in accordance with procedures specified by [CARB]."

115.    The 2001-2014 Test Procedures and 2015-2025 Test Procedures, as defined above and incorporated into Cal. Code Regs., tit. 13, §§ 1961 and 1961.2, respectively, set forth the procedures specified by CARB for changes with respect to previously certified motor vehicles.

116.    Specifically, the 2001-2014 Test Procedures and 2015-2025 Test Procedures incorporate by reference 40 C.F.R. § 86.1842-01, which requires that a manufacturer notify the Administrator, defined as the Executive Officer of CARB for purposes of the Test Procedures, "concurrently with (or in advance of) any change or addition in production vehicles which creates a new vehicle configuration within the car lines covered in a certified test group, giving a full description of the change."  Under 40 C.F.R. § 86.1842-01, such a change is referred to as a "running change."  The 2001-2014 Test Procedures and 2015-2025 Test Procedures further provide that, within thirty days after a manufacturer proposes any such running change, the Executive Officer may request additional information from the manufacturer or deny the proposed change.

117.    Defendant made running changes to certain Subject Vehicles, which were not reported to CARB concurrently with or in advance of those changes.

118.    Defendant's actions in implementing running changes with respect to previously certified motor vehicles without notifying CARB of those changes violated the applicable test procedures as incorporated in Cal. Code Regs., tit. 13, §§ 1961 and 1961.2, and constitute multiple violations of California Health and Safety Code § 43106 and 43016.

30

COMPLAINT – PEOPLE OF THE STATE OF CALIFORNIA v. CUMMINS INC.

## NINTH CAUSE OF ACTION
### (Cal. Civ. Code § 3494 [Public Nuisance])
### [By the California Attorney General for the State of California on Behalf of the People of the State of California]

119. California Plaintiff incorporates and realleges paragraphs 1 through 64, inclusive, as if set forth here in full.

120. A "nuisance" is defined in California Civil Code § 3479 as "[a]nything which is injurious to health . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property. . . ."

121. A "public nuisance" is defined in § 3480 of the California Civil Code as a nuisance "which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal."

122. Pursuant to California Civil Code § 3494, "a public nuisance may be abated by any public body or officer authorized thereto by law." Courts have recognized that the Attorney General has authority to maintain an action in the name of the People of the State of California to abate a public nuisance.

123. The manufacture, marketing, and offering for sale or lease or rent, or the sale, lease or renting of motor vehicles or motor vehicle engines that emit NOx in excess of legal limits threatens public health and safety, the environment, and the People of the State of California, and constitutes a continuing nuisance throughout the State pursuant to California Civil Code §§ 3479 and 3480.

124. Excess NOx, ozone, and particulate matter are present throughout California as a result of Defendant's actions, and illegal and harmful excess emissions continue to be emitted into California's environment from the Subject Vehicles.

125. The emission of excess NOx throughout California affects and/or interferes with an entire community's and/or a considerable number of persons'

31

1  right to health, safety, peace, comfort, and convenience in the State of California,

2  thereby constituting a public nuisance pursuant to California Civil Code §§ 3479

3  and 3480.

4      126.    Defendant knowingly, intentionally, and/or recklessly created or

5  assisted in the creation of a substantial and unreasonable nuisance as a result of

6  Defendant's actions emitting harmful excess emissions in California.

7      127.    Defendant is liable for public nuisance in that Defendant created

8  and/or contributed to the creation of and/or assisted in the creation and/or was a

9  substantial contributing factor in the creation of the public nuisance described

10 herein through the conduct described herein.

**TENTH CAUSE OF ACTION**
**(Cal. Bus. & Prac. Code § 17200 [Unfair Competition Law])**
**[By the Attorney General for the State of California on Behalf of the People of the State of California]**

14     128.    California Plaintiff incorporates and realleges paragraphs 1 through

15 64, inclusive, as if set forth here in full.

16     129.    As set forth in California's Unfair Competition Law, California

17 Business and Professions Code § 17200 provides that "unfair competition shall

18 mean and include any unlawful, unfair or fraudulent business act or practice and

19 unfair, deceptive, untrue or misleading advertising and any act prohibited by

20 [California Business and Professions Code §§ 17500-17606]."

21     130.    Defendant has engaged in unlawful, unfair, or fraudulent acts or

22 practices that constitute unfair competition within the meaning of California

23 Business and Professions Code § 17200.  Defendant's acts and practices in

24 violation of California Business and Professions Code § 17200 include, but are not

25 limited to, the following:

26         a. Defendant's actions constitute multiple violations of 42 U.S.C. §

27         7604(a)(1), as alleged in the First Cause of Action in paragraphs 65

28

32

COMPLAINT – PEOPLE OF THE STATE OF CALIFORNIA v. CUMMINS INC.

through 74, which allegations are incorporated herein as if set forth in full.

b. Defendant's actions constitute multiple violations of California Health and Safety Code § 43151 as alleged in the Second Cause of Action in paragraphs 75 through 82 which allegations are incorporated herein as if set forth in full. Defendant's actions constitute multiple violations of California Vehicle Code § 27156 as alleged in the Third Cause of Action in paragraphs 83 through 88, which allegations are incorporated herein as if set forth in full.

c. Defendant's actions constitute multiple violations of California Health and Safety Code § 43211 and the requirements in Cal. Code Regs., tit. 13, §§ 1961 and 1961.2 as alleged in the Fourth Cause of Action in paragraphs 89 through 93, which allegations are incorporated herein as if set forth in full.

d. Defendant's actions constitute multiple violations of California Health and Safety Code § 43212 and the requirements in Cal. Code Regs., tit. 13, §§ 1961 and 1961.2 as alleged in the Fifth Cause of Action in paragraphs 94 through 100, which allegations are incorporated herein as if set forth in full.

e. Defendant's actions constitute multiple violations of California Health and Safety Code § 43016 and the requirements in Cal. Code Regs., tit. 13, § 1968.2 as alleged in the Sixth Cause of Action in paragraphs 101 through 105, which allegations are incorporated herein as if set forth in full.

f. Defendant's actions constitute multiple violations of California Health and Safety Code § 43016 and the requirements in Cal. Code Regs., tit. title 13, § 1965 as alleged in the Seventh Cause of Action in

1    paragraphs 106 through 112, which allegations are incorporated herein

2    as if set forth in full.

3    g.  Defendant's actions constitute multiple violations of California Health

4    and Safety Code § 43106 and the requirements in Cal. Code Regs., tit.

5    title 13, §§ 1961 and 1961.2 as alleged in the Eighth Cause of Action

6    in paragraphs 113 through 118, which allegations are incorporated

7    herein as if set forth in full.

8    h.  Defendant's actions constitute a continuing nuisance throughout

9    California pursuant to California Civil Code §§ 3479 and 3480 in

10    violation of California Civil Code § 3494 as alleged in the Ninth Cause

11    of Action in paragraphs 119 through 127, which allegations are

12    incorporated herein as if set forth in full.

## **PRAYER FOR RELIEF**

WHEREFORE, the People request that the Court enter a judgment against Defendant as follows:

131.    Pursuant to the CAA, that Defendant be enjoined from violations of the California State Implementation Plan as alleged in this Complaint related to the applicable emissions standards set forth in Cal. Code Regs., tit. 13, §§ 1961 and 1961.2.

132.    Pursuant to the CAA, that Defendant take appropriate steps to remedy and prevent violations of the California State Implementation Plan as alleged in this Complaint, including, but not limited to, mitigation of excess NOx emissions from the Subject Vehicles.

133.    Pursuant to California Health and Safety Code § 43017, that Defendant be enjoined from further violations of the California Health and Safety Code and CARB regulations relating to vehicular air pollution control as alleged in this Complaint, in particular from further importing or delivering new motor

vehicle engines for sale, offer for sale, lease, or rental in California which were not validly certified by CARB, and further selling or offering to sell, offering for sale, leasing or offering to lease, or renting or offering to rent in California, new motor vehicle engines which have not been validly certified by CARB.

134.    Pursuant to California Health and Safety Code § 43017, that Defendant take appropriate steps to remedy and prevent violations of the California Health and Safety Code and CARB regulations relating to vehicular air pollution control as alleged in this Complaint, including, but not limited to, mitigation of excess NOx emissions from the Subject Vehicles.

135.    Pursuant to California Health and Safety Code § 43154, for violations occurring before January 1, 2017, that the Court assess civil penalties of up to $5,000 per affected vehicle against Defendant for each violation of California Health and Safety Code § 43151.[8]

136.    Pursuant to California Health and Safety Code § 43154, for violations occurring on or after January 1, 2017, that the Court assess civil penalties of up to $37,500 per action for each violation of California Health and Safety Code § 43151. Under California Health and Safety Code § 43154(a)(3), the maximum amount is adjusted annually for inflation based on the California Consumer Price Index.  As of the date of filing, the maximum penalty is $45,563 for each violation.

137.    Pursuant to California Health and Safety Code § 43008.6, that the Court assess civil penalties of up to $1,500 per engine or vehicle for each violation of California Vehicle Code § 27156.

138.    Pursuant to California Health and Safety Code § 43211, for violations occurring before January 1, 2017, that the Court assess the mandatory civil penalty

---

[8] Section 43154, which authorizes civil penalties for violations of these statutes, was amended, effective January 1, 2017, to increase the penalty from up to $5,000 per vehicle to up to $37,500 per action.  See 2016 Cal. Legis. Serv. Ch. 604 (A.B. 1685, "AIR POLLUTION—MOTOR VEHICLES—FINES AND PENALTIES").

1   of $5,000 against Defendant for each sale of, offer to sell, action which caused an

2   offer to sell, or attempt to sell an affected engine or vehicle that does not comply

3   with the applicable emissions standards in Cal. Code Regs., tit. 13, § 1961.

4       139.   Pursuant to California Health and Safety Code § 43211, for violations

5   occurring on or after January 1, 2017, that the Court assess a civil penalty of up to

6   $37,500 against Defendant for each sale of, offer to sell, action which caused an

7   offer to sell, or attempt to sell an affected engine or vehicle that does not comply

8   with the applicable emissions standards in Cal. Code Regs., tit. 13, § 1961.  Under

9   California Health and Safety Code § 43211(c), the maximum amount is adjusted

10  annually for inflation based on the California Consumer Price Index.  As of the date

11  of filing, the maximum penalty is $45,563 for each violation.

12      140.   Pursuant to California Health and Safety Code § 43212, for violations

13  occurring before January 1, 2017, that the Court assess civil penalties of $50 against

14  Defendant for each affected engine or vehicle for each failure to comply with the

15  applicable test procedures, including those test procedures incorporated by

16  reference, in Cal. Code Regs., tit. 13, §§ 1961 and 1961.2.

17      141.   Pursuant to California Health and Safety Code § 43212, for violations

18  occurring on or after January 1, 2017, that the Court assess civil penalties of up to

19  $37,500 against Defendant for each affected engine or vehicle for each failure to

20  comply with the applicable test procedures, including those test procedures

21  incorporated by reference, in Cal. Code Regs., tit. 13, §§ 1961 and 1961.2.  Under

22  California Health and Safety Code § 43212(a)(2), the maximum amount is adjusted

23  annually for inflation based on the California Consumer Price Index.  As of the date

24  of filing, the maximum penalty is $45,563 for each violation.

25      142.   Pursuant to California Health and Safety Code § 43016, for violations

26  before January 1, 2017, that the Court assess a civil penalty of up to $500 per

27  affected vehicle against Defendant for each violation of Cal. Code Regs., tit. 13, §

28  1968.2.

143.   Pursuant to California Health and Safety Code § 43016, for violations on or after January 1, 2017, that the Court assess a civil penalty of up to $37,500 per action against Defendant for each violation of Cal. Code Regs., tit. 13, § 1968.2.  Under California Health and Safety Code § 43016(a)(2), the maximum amount is adjusted annually for inflation based on the California Consumer Price Index.  As of the date of filing, the maximum penalty is $45,563 for each violation.

144.   Pursuant to California Health and Safety Code § 43016, for violations before January 1, 2017, that the Court assess a civil penalty of up to $500 per affected vehicle against Defendant for each violation of Cal. Code Regs., tit. 13, § 1965.

145.   Pursuant to California Health and Safety Code § 43016, for violations on or after January 1, 2017, that the Court assess a civil penalty of up to $37,500 per action against Defendant for each violation of Cal. Code Regs., tit. 13, § 1965.  Under California Health and Safety Code § 43016(a)(2), the maximum amount is adjusted annually for inflation based on the California Consumer Price Index.  As of the date of filing, the maximum penalty is $45,563 for each violation.

146.   Pursuant to California Health and Safety Code § 43016, for violations occurring before January 1, 2017, that the Court assess a civil penalty of up to $500 per affected vehicle against Defendant for each violation of California Health and Safety Code § 43106.

147.   Pursuant to California Health and Safety Code § 43016, for violations occurring on or after January 1, 2017, that the Court assess a civil penalty of up to $37,500 per action against Defendant for each violation of California Health and Safety Code § 43106.  Under California Health and Safety Code § 43016(a)(2), the maximum amount is adjusted annually for inflation based on the California Consumer Price Index.  As of the date of filing, the maximum penalty is $45,563 for each violation.

148.    Pursuant to California Business and Professions Code § 17206, that the Court assess a civil penalty of $2,500 against Defendant for each violation of California Business and Professions Code § 17200.

149.    Pursuant to California Code of Civil Procedure § 3494, that Defendant be ordered and enjoined to abate the public nuisance that exists within the State of California.

150.    Pursuant to California Code of Civil Procedure § 1021.8(a), that the Court award the California Attorney General all costs of investigating and prosecuting the action, including expert fees, reasonable attorney's fees, and costs for enforcement of California Civil Code § 3494.

151.    Pursuant to 42 U.S.C. § 7604(d), that the Court award California Plaintiff its costs of litigation, including reasonable attorney and expert witness fees.

152.    That California Plaintiff recover its costs of suit, including costs of investigation.

153.    For such other and further relief as the Court deems just and proper.

Dated: January 10, 2024                    Respectfully Submitted,

ROB BONTA
Attorney General of California
ED OCHOA
TRACY L. WINSOR
Senior Assistant Attorneys General
MICHAEL P. CAYABAN
SARAH MORRISON
Supervising Deputy Attorneys General


*/s/ Joshua M. Caplan*
JOSHUA M. CAPLAN
NATALIE E. COLLINS
ELIZABETH SONG
TAYLOR WETZEL
Deputy Attorneys General
*Attorneys for Plaintiff the People of the State of California, by and through Rob Bonta, Attorney General of the State of California, and the California Air Resources Board*