1   ROB BONTA
    Attorney General of California
2   TRACY WINSOR
    Senior Assistant Attorney General
3   MICHAEL P. CAYABAN (CA Bar No. 179252)
    Supervising Deputy Attorney General
4   JOSHUA M. CAPLAN (CA Bar No. 245469)
    NATALIE COLLINS (CA BAR NO. 338348)
5   Deputy Attorneys General
      600 West Broadway, Suite 1800
6     San Diego, CA 92186-5266
      Telephone: (619) 738-9303
7     Fax: (619) 645-2271
      E-mail:  Mike.Cayaban@doj.ca.gov
8     E-mail:  Josh.Caplan@doj.ca.gov
      E-mail:  Natalie.Collins@doj.ca.gov
9
    ED OCHOA
10  Senior Assistant Attorney General
    SARAH MORRISON (CA Bar No. 143459)
11  Supervising Deputy Attorney General
    ELIZABETH SONG (CA Bar No. 326616)
12  TAYLOR WETZEL (CA Bar No. 329637)
    Deputy Attorneys General
13    300 S. Spring St., Suite 1702
      Los Angeles, CA 90013
14    Telephone: (213) 269-6221
      Fax: (916) 731-2128
15    E-mail:  Sarah.Morrison@doj.ca.gov
      E-mail:  Elizabeth.Song@doj.ca.gov
16    E-mail:  Taylor.Wetzel@doj.ca.gov

17  *Attorneys for Plaintiff the People of the State of California,*
    *by and through Rob Bonta, the Attorney General of the*
18  *State of California and the California Air Resources Board*

19              IN THE UNITED STATES DISTRICT COURT

20              FOR THE DISTRICT OF COLUMBIA

21

22  PEOPLE OF THE STATE OF              CASE NO.
    CALIFORNIA,
23                                      CALIFORNIA PARTIAL CONSENT
                                        DECREE
24                        Plaintiff,

25          v.

26  CUMMINS INC.,

27                        Defendant.

28

                                1

WHEREAS, Plaintiff the People of the State of California, acting by and through Rob Bonta, Attorney General of the State of California in his independent capacity ("the California Attorney General"), and the California Air Resources Board ("CARB"), represented by the Office of the California Attorney General (collectively, "Plaintiff") filed a complaint (the "California Complaint") in this action on January 10, 2024, against Cummins Inc. ("Defendant").

In the California Complaint, CARB alleges that Defendant violated certain provisions of California law, including without limitation California Health and Safety Code §§ 43008.6, 43016, 43106, 43151, 43154, 43211, and 43212; California Vehicle Code § 27156; and Cal. Code Regs., tit. 13, §§ 1961, 1961.2, 1965, and 1968.2, with regard to approximately 97,806 Model Year ("MY") 2013-2023 6.7 liter diesel engines installed in RAM 2500 and RAM 3500 vehicles certified, manufactured, imported, distributed, and sold in California (collectively, the "Subject Vehicles").  CARB alleges these purported violations give rise to a citizen suit pursuant to 42 U.S.C. § 7604 and 40 C.F.R. § 54.3.

In the California Complaint, the California Attorney General, in his independent capacity, alleges that Defendant engaged in unlawful business acts or practices under the Unfair Competition Law ("UCL"), California Business and Professions Code, §§ 17200 *et seq.*, through its violation of the foregoing sections of the California Health and Safety Code, California Vehicle Code, and California Code of Regulations ("UCL claim").  The California Attorney General further alleges that Defendant created or contributed to a public nuisance under California Civil Code § 3494 ("public nuisance claim").  Collectively, CARB's and the California Attorney General's claims in his independent capacity are referred to herein as the "Claims";

WHEREAS, the California Complaint alleges, among other things, that the Subject Vehicles contain undisclosed and unapproved Auxiliary Emission Control

2

Devices ("AECDs"), prohibited Defeat Devices, and/or unreported, unapproved Running Changes and Field Fixes, some that have resulted in increased oxides of nitrogen ("NOx") emissions from each Subject Vehicle in excess of California limits;

WHEREAS, Defendant and Plaintiff People of the State of California by and through CARB intend to resolve certain aspects of the Claims through the entry of a concurrently lodged consent decree among the United States, Plaintiff People of the State of California by and through CARB, and Defendant (the "US/CARB Consent Decree") concerning the Subject Vehicles, that, among other things, ensures that Defendant has installed, and will continue to install, Emission Modifications in all Eligible Vehicles, requires Defendant to implement certain corporate compliance policies and practices in conjunction with its existing corporate and compliance management activities, requires Defendant to make a civil penalty payment of $164,000,000 to the "California Air Resources Board," and may require a separate stipulated penalties payment to the "California Air Resources Board" if there is future noncompliance with requirements of the US/CARB Consent Decree.  These funds shall be deposited into the Air Pollution Control Fund, for the purpose of enhancing CARB's mobile source emissions control program through additional certification review, in-use evaluation, real-world testing, enforcement actions, and other CARB activities related to the control of air pollution;

WHEREAS, Defendant and Plaintiff (collectively, the "Parties" and individually, a "Party") have agreed, through this partial consent decree ("California Partial Consent Decree"), to resolve the remaining aspects of the Claims related to the Subject Vehicles without the need for litigation;

WHEREAS, Defendant and the California Attorney General have agreed, through the California Partial Consent Decree, to resolve the California Attorney

General's claims alleged in the California Complaint, including the UCL claim and the public nuisance claim;

WHEREAS, this California Partial Consent Decree provides certain injunctive and monetary relief to Plaintiff, including environmental mitigation funds paid to CARB that are intended to fully mitigate the total lifetime excess NOx emissions from the Subject Vehicles in California;

WHEREAS, nothing in this California Partial Consent Decree nor Defendant's consent to its entry shall constitute an admission of any fact or law by any Party, including as to any factual or legal assertion set forth in the California Complaint, except for the purpose of enforcing the terms or conditions set forth herein;

WHEREAS, the Parties recognize, and the Court by entering this California Partial Consent Decree finds, that this California Partial Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties regarding certain aspects of the Claims, and that this California Partial Consent Decree is fair and reasonable, with Plaintiff alleging that it also is in the public interest; and

WHEREAS, this California Partial Consent Decree and the US/CARB Consent Decree together form an integrated resolution of the Claims, and that, as set forth herein, this California Partial Consent Decree will not become effective unless and until the US/CARB Consent Decree is entered or the Court grants a motion entering the US/CARB Consent Decree, whichever occurs first.

NOW, THEREFORE, before the taking of any testimony, without the adjudication of any issue of fact or law, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    JURISDICTION AND VENUE

1.   The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and over the Parties to the extent limited by this Paragraph. Venue lies in this District pursuant to 28 U.S.C. § 1391(b).  The Court has supplemental jurisdiction over California's state law claims pursuant to 28 U.S.C. § 1367.  For purposes of this California Partial Consent Decree, or in any action to enforce this California Partial Consent Decree, the Parties agree to and Defendant consents to this Court's jurisdiction over this California Partial Consent Decree and over any action to enforce this California Partial Consent Decree, and over Defendant, and consents to venue in this judicial district.  Defendant reserves the right to challenge and oppose any claims to jurisdiction that do not arise from the Court's jurisdiction over this California Partial Consent Decree or an action to enforce this California Partial Consent Decree.

2.   For purposes of this California Partial Consent Decree only, Defendant agrees that the California Complaint states claims upon which relief may be granted pursuant to: California Health and Safety Code §§ 43008.6, 43016, 43106, 43151, 43154, 43211, and 43212; California Vehicle Code § 27156; Cal. Code Regs., tit. 13§§ 1961, 1961.2, 1965, and 1968.2; 42 U.S.C. § 7604; 40 C.F.R. § 54.3; the UCL; and California Civil Code § 3494.

# II.    APPLICABILITY

3.   The obligations of this California Partial Consent Decree apply to and are binding upon Plaintiff, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.   No transfer of ownership or operation, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of this California Partial Consent Decree are implemented. At least 30 Days prior to such transfer, Defendant shall provide a copy of this

5

California Partial Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to CARB and the California Attorney General, in accordance with Section XIV (Notices).

5.   Defendant shall provide a copy of this California Partial Consent Decree to the members of its Board of Directors and to its officers and executives whose duties might reasonably include compliance with, or oversight over compliance with, any provision of this California Partial Consent Decree.  Defendant shall also ensure that any contractors retained to perform work required under the material terms of this California Partial Consent Decree, agents, or employees whose duties might reasonably include compliance with any provision of this California Partial Consent Decree are made aware of those requirements of the California Partial Consent Decree relevant to their performance.

6.   In any action to enforce this California Partial Consent Decree, Defendant shall not raise as a defense the failure by any of its respective officers, directors, employees, agents, or contractors or failure by its Business Partners to take any actions necessary to comply with the provisions of this California Partial Consent Decree, except in accordance with the provisions of Section XI (Force Majeure).

### III.   DEFINITIONS

7.   Terms that are defined in this California Partial Consent Decree are defined for purposes of this California Partial Consent Decree only and are not applicable for any other purpose.  Whenever the terms set forth below are used in this California Partial Consent Decree, the following definitions shall apply:

a. "2013–2019 RAMs" means the sub-category of Subject Vehicles identified as 2013–2019 RAMs in Appendix E of the California Partial Consent Decree.

b. "Additional Reported OBD Noncompliances" means any OBD noncompliance with the applicable version of Cal. Code Regs., tit. 13 § 1968.2 that (1) is reported to CARB in accordance with Appendix D of this California Partial Consent Decree within 365 days of the Effective Date, whether discovered by Defendant through OBD demonstration testing or through Defendant's internal processes; and (2) is not a Pre-Approved OBD Noncompliance, Unreported OBD Noncompliance, OBD Noncompliance Resulting in Mandatory Recall, or OBD Noncompliance with Inspection and Maintenance (SMOG Check).

c. "Air Pollution Control Fund" means the fund established by California Health and Safety Code § 43015.

d. "Auxiliary Emission Control Device" has the meaning set forth in 40 C.F.R. § 86.1803-01.

e. "Business Day" means a calendar day that does not fall on a Saturday, Sunday, federal holiday, or California or Indiana state holiday.  In computing any period of time under this California Partial Consent Decree, where the last Day would fall on a Saturday, Sunday, federal holiday, or California or Indiana state holiday, the period shall run until the close of business of the next Business Day. The time in which any act provided by this California Partial Consent Decree is to be done is computed by excluding the first day, and including the last, unless the last day is a Saturday, Sunday, federal holiday, or Indiana or California state holiday, and then it is also excluded.

f. "Business Partners" means: (1) Defendant's First-Tier Customer; and (2) Dealers.

g. "California Attorney General" means Rob Bonta, the Attorney General of the State of California and the California Attorney General's Office and any of its successor departments or agencies.

h. "California Complaint" means the complaint filed by Plaintiff the People of the State of California, acting by and through the California Attorney General and CARB in this action.

i. "California Partial Consent Decree" means this partial consent decree.

j. "CARB" means the California Air Resources Board and any of its successor departments or agencies.

k. "Claims" means the allegations set forth in the California Complaint by CARB and/or the California Attorney General.

l. "Day" means a calendar day unless expressly stated to be a Business Day.  In computing any period of time for a deadline under this California Partial Consent Decree, where the last day would fall on a Saturday, Sunday, federal holiday, or California or Indiana state holiday, the period runs until the close of business of the next Business Day. The time in which any act provided by this California Partial Consent Decree is to be done is computed by excluding the first day, and including the last, unless the last day is a Saturday, Sunday, federal holiday, or Indiana or California state holiday, and then it is also excluded.

m. "Dealers" means RAM truck dealers authorized by Defendant's First-Tier Customer to sell and/or service Subject Vehicles in the United States.

n. "Defeat Device" has the meaning set forth in 40 C.F.R. § 86.1803-01.

o. "Defendant" means Cummins Inc.

p. "Defendant's First-Tier Customer" means FCA US LLC, which purchased diesel-powered motor vehicle engines from Defendant for use in the Subject Vehicles that FCA US LLC manufactured.

q. "Effective Date" has the meaning set forth in Paragraph 86 below.

8

1
2
3
4

   r.  "Eligible Lessee" means (1) the current lessee or lessees of an Eligible Vehicle with an active lease as of the date the Eligible Vehicle receives the approved Emission Modification; or (2) solely for purposes of any OBD recall, the subsequent lessee or lessees of an Eligible Vehicle at the time of the OBD recall.

5
6
7
8

   s.  "Eligible Owner" means the (1) owner or owners of an Eligible Vehicle on the day that the Eligible Vehicle receives or is eligible to receive the Emission Modification; or (2) solely for purposes of any OBD recall, the subsequent owner or owners of an Eligible Vehicle at the time of the OBD recall.

9
10
11
12

   t.  "Eligible Vehicle" means any 2013–2019 RAM that is (1) registered with the California Department of Motor Vehicles or equivalent agency or held by a Dealer or unaffiliated dealer and located in the United States; and (2) operable as of the date the vehicle is brought in for the Emission Modification.

13
14
15
16
17
18
19
20
21

   u.  "Emission Modification" or "Emissions Modifications" means the revised software configurations/calibrations that Defendant and its Business Partners have been and will be installing in Subject Vehicles as part of the Emission Modification Program, defined in Paragraph 19 of the US/CARB Consent Decree. The terms "Emission Modification" and "Emissions Modifications" shall also include and encompass any Allowable Emission Modification Adjustments, as defined in Paragraph 23.b of the US/CARB Consent Decree, to the 2019 Emission Modification and/or the 2013–2018 Emission Modification made in compliance with US/CARB Consent Decree Paragraphs 20 and 21, respectively.

22
23
24

   v.  "Emission Modification OBD Demonstration Report" means the report and all required content, as specified in Appendix A to this California Partial Consent Decree.

25
26

   w. "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies.

27
28

x. "Field Fix" has the meaning provided pursuant to 40 C.F.R. § 86.1842-01(b) and/or Cal. Code Regs., tit. 13 §§ 1961(d), 1961.2(d), and/or CARB Manufacturer's Advisory Correspondence #79-002, "Field Fixes Involving Emission-Related Components," (Jan. 31, 1979), and/or EPA Advisory Circular 2B, Field Fixes Related to Emission Control-Related Components (Mar. 17, 1975), as applicable.

y. "Full Useful Life" has the meaning set forth in 40 C.F.R. § 86.1805-12.

z. "Inspection and Maintenance Readiness Flags" means the readiness status for each component/system readiness bit identified in Cal. Code Regs., tit. 13, § 1968.2(g)(4.1) and Society of Automotive Engineers J1979 specifications (i.e., Service $01, Parameter Identification $01).  The readiness flags will indicate "ready" or "complete" upon the respective monitor(s) determining that the component or system is not malfunctioning or the monitor indicates a malfunction for the component or system after the requisite number of decisions necessary for determining MIL status has been fully executed, in accordance with Cal. Code Regs., tit. 13, § 1968.2(g)(4.1).

aa.      "J3 Testing Report" means the report and all required content, as specified in Appendix A to this California Partial Consent Decree.

bb.      "Malfunction" means a circumstance where a vehicle experiences a mechanical or electrical problem, including as the result of damage or accident, that (1) renders the vehicle inoperable; (2) presents a safety or environmental hazard if the vehicle continues to be operated (such as an oil leak); or (3) causes an OBD event (for example, recording a pending fault code or illuminating the MIL), except for the following OBD events: (a) OBD events during OBD demonstration testing; and (b) false detection or MIL illumination due to chassis dynamometer simulation testing, unless such false detection or MIL

10

illumination causes a default action or default strategy that changes the emission performance behavior.

cc.     "MIL" means the malfunction indicator light of the OBD system outlined in Cal. Code Regs., tit. 13, § 1968.2 that illuminates to notify the vehicle operator of detected malfunctions.

dd.     "Model Year" or "MY" has the meaning set forth in 40 CFR § 86.1803-01.

ee.     "NMHC" means "non-methane hydrocarbons," i.e., the sum of all hydrocarbon species except methane.

ff. "NOx" means oxides of nitrogen, i.e., the sum of the nitric oxide and nitrogen dioxide contained in a gas sample as if the nitric oxide were in the form of nitrogen dioxide.

gg.     "On-Board Diagnostic System" or "OBD System" or "OBD" means all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations, and other elements of design that collectively constitute the system for monitoring all systems and components that must be monitored pursuant to the version of Cal. Code Regs., tit. 13, § 1968.2 applicable at the time of certification for the particular Model Year of a Subject Vehicle, for the purpose of identifying and detecting malfunctions of such monitored systems and components, and for alerting the driver of such potential malfunctions by illuminating the MIL.

hh.     "OBD Cluster(s)" means the groupings of the Subject Vehicles by Model Year and Test Group as follows numerically:

1. "OBD Cluster (1)" means the MY 2013–2015 RAMs grouping, as identified in Appendix B of this California Partial Consent Decree.

2.  "OBD Cluster (2)" means the MY 2016–2017 RAMs grouping, as identified in Appendix B of this California Partial Consent Decree.

3.  "OBD Cluster (3)" means the MY 2018 RAMs grouping, as identified in Appendix B of this California Partial Consent Decree.

4.  "OBD Cluster (4)" means the MY 2019 RAMs grouping, as identified in Appendix B of this California Partial Consent Decree.

ii. "OBD Infrequent Regeneration Adjustment Factor" or "OBD IRAF" means the additive or upward adjustment factor for each pollutant used to account for increased emissions caused by periodic regeneration of any aftertreatment device or strategies activated for monitoring faulty components of the control system in order to adjust the emissions results used to determine the malfunction criterion for monitors that are required to indicate a malfunction before emissions exceed the applicable emission threshold.

jj. "OBD Interim Report" means a report containing the details identified in Appendix A for each OBD cluster as described in Appendix B to this California Partial Consent Decree.

kk.     "OBD Noncompliance" means any noncompliance with Cal. Code Regs., tit. 13, § 1968.2, and includes Pre-Approved OBD Noncompliances, Additional Reported OBD Noncompliances, Unreported OBD Noncompliances, OBD Noncompliance Resulting in Mandatory Recall, and OBD Noncompliance with Inspection and Maintenance (SMOG Check). CARB's evaluation for OBD Noncompliance will be done consistent with CARB's new vehicle certification procedures.

12

ll. "OBD Noncompliance Resulting in Mandatory Recall" means any and all noncompliances listed in the applicable version of Cal. Code Regs., tit. 13, § 1968.5(c)(3) (except Cal. Code Regs., tit. 13, § 1968.5(c)(3)(A)(vii) (2016)).

mm.   "OBD Noncompliance with Inspection and Maintenance (SMOG Check)" means any and all noncompliances listed in the applicable version of Cal. Code Regs., tit. 13, § 1968.5(b)(6)(C)(ii).

nn.   "OBD Test Protocol" means the protocol for demonstrating OBD compliance as identified in Appendix A to this California Partial Consent Decree.

oo.   "Paragraph" means a portion of this California Partial Consent Decree identified by an Arabic numeral.

pp.   "Plaintiff" means the People of the State of California, acting by and through the California Attorney General in his independent capacity and the California Air Resources Board.

qq.   "Pre-Approved OBD Noncompliance" means any and all OBD Noncompliances described in Appendix C of this California Partial Consent Decree.

rr. "PVE" means production vehicle evaluation, which is testing conducted in accordance with the requirements of Cal. Code Regs., tit. 13, § 1968.2(j) (2016), as modified by Appendix A of this California Partial Consent Decree.

ss. "QA/QC Reports" or "Quality Assurance/Quality Control Reports" means records describing actions, measures, and steps taken to ensure the reliability and validation of the data and testing conducted under Appendix A of this California Partial Consent Decree. For OBD testing conducted pursuant to Appendix A of this California Partial Consent Decree, the QA/QC Reports will document compliance with 40 C.F.R. Part 86.

13

tt. "Records" means all non-identical copies of all documents, records, reports, or other information (including documents, records, or other information in electronic form).

uu.    "Running Change" has the meaning provided under 40 C.F.R. § 86.1803-01.

vv.    "Section" means a portion of this California Partial Consent Decree identified by a Roman numeral.

ww.    "Subject Vehicles" means any vehicles identified in Appendix E to the California Partial Consent Decree that were sold or offered for sale (or introduced or delivered for introduction into commerce) in California and that are or were purported to have been covered by the Test Groups listed in Appendix E of the California Partial Consent Decree, including such vehicles sub-categorized as 2013–2019 RAMs and 2019–2023 RAMs.

xx.    "Submission" means any plan, report, application, or other item that is required to be submitted for approval pursuant to this California Partial Consent Decree.

yy.    "Test Group" means a vehicle family that is grouped together for certification and compliance purposes because the vehicles are expected to have similar emission characteristics throughout their Full Useful Life periods.  Each Test Group is assigned a unique alphanumeric Test Group that begins with a one-digit model year date code.  As used in this California Partial Consent Decree, the term "Test Group Suffix" means the portion of the alphanumeric Test Group code after the one-digit model year date code.  For example, as shown in Appendix E of the California Partial Consent Decree, the Test Group Suffix for the 2019–2023 RAM 2500 vehicles is "CEXD06.78VV" and the Test Group Suffix for the 2019–2023 RAM 3500 vehicles is "CEXD06.78WV."

14

1   zz.     "US/CARB Consent Decree Effective Date" means the date

2   upon which the US/CARB Consent Decree is entered by the Court or a motion to

3   enter the US/CARB Consent Decree is granted, whichever occurs first, as recorded

4   on the Court's docket.

5   aaa.     "Undisclosed AECD" means an AECD installed in Subject

6   Vehicles that: (1) Defendant developed and prescribed for installation in Subject

7   Vehicles; and (2) Defendant did not list and describe as required by 40 C.F.R. §

8   86.1844-01(d)(11) and/or 40 C.F.R. § 86.1842-01.  Provided, however, that solely

9   for the purpose of this California Partial Consent Decree, the specially defined term

10  "Undisclosed AECD" shall not include: (1) the Alternative NOx Conversion Target

11  Table AECD disclosed in Defendant's December 21, 2022, supplemental AECD

12  disclosure for MY 2023 Subject Vehicles; and (2) prior versions or iterations of the

13  Alternative NOx Conversion Target Table AECD previously installed in other

14  Subject Vehicles.

15  bbb.     "Unreported OBD Noncompliance" means any noncompliance

16  with Cal. Code Regs., tit. 13, § 1968.2 that was not disclosed by Defendant to

17  CARB that is not (1) a Pre-Approved OBD Noncompliance; (2) an Additional

18  Reported OBD Noncompliance; (3) an OBD Noncompliance Resulting in

19  Mandatory Recall; or (4) an OBD Noncompliance with Inspection and Maintenance

20  (SMOG Check).

21  ccc.     "VIN" means vehicle identification number, as defined in 49

22  C.F.R. § 565.12.

23  ### IV.   **INJUNCTIVE PROVISIONS**

24

25  8.   Under California Business and Professions Code § 17203 and California

26  Civil Code § 3494, Defendant and Defendant's officers, agents, employees, and

27  attorneys, and all other persons in active concert or participation with any of them,

28

who receive actual notice of this California Partial Consent Decree, whether acting directly or indirectly, are permanently enjoined from:

a. Introducing into commerce, importing, delivering, purchasing, acquiring, receiving, distributing, offering for sale, selling, offering for lease, leasing, offering for rent, renting, or assisting others in introducing into commerce, importing, delivering, purchasing, acquiring, receiving, distributing, offering for sale, selling, offering for lease, leasing, offering for rent, or renting in California any engine or vehicle that contains a Defeat Device and/or any Undisclosed AECD, or otherwise fails to comply with California Health and Safety Code §§ 43008.6, 43016, 43106, 43151, 43154, 43211, and 43212; Cal. Code Regs., tit. 13, §§ 1961, 1961.2, 1965, and 1968.2, allegedly giving rise to a citizen suit pursuant to 42 U.S.C. § 7604 and 40 C.F.R. § 54.3;

b. Performing undisclosed and/or unapproved Running Changes or Field Fixes or otherwise violating California Vehicle Code § 27156;

c. Engaging in unlawful business acts or practices prohibited by the UCL, by violating California Health and Safety Code §§ 43008.6, 43016, 43106, 43151, 43154, 43211, and 43212; California Vehicle Code § 27156; Cal. Code Regs., tit. 13, §§1961, 1961.2, 1965, and 1968.2, allegedly giving rise to a citizen suit pursuant to 42 U.S.C. § 7604 and 40 C.F.R. § 54.3;

d. Failing to promptly notify CARB and the California Attorney General when Defendant has reason to believe that a Defeat Device and/or any Undisclosed AECD has been included in an engine or vehicle, at any time, that was introduced into commerce, imported, delivered, purchased, acquired, received, sold or offered for sale, leased or offered for lease, rented or offered for rent, or distributed by Defendant or Defendant's Business Partners in California;

16

e. Failing to comply with any injunctive terms in the US/CARB Consent Decree concerning the Subject Vehicles, but only to the extent that the aforementioned injunctive terms apply to the Subject Vehicles or to Defendant; and

f. Creating or contributing to a public nuisance, under California Civil Code § 3494, by causing NOx emissions in excess of federal and/or state laws or regulations.

9.   Defendant will submit a copy of any report filed under Section VIII (Reporting Requirements) of the US/CARB Consent Decree to the California Attorney General in accordance with Section XIV (Notices).

10. Nothing in this California Partial Consent Decree alters the requirements of federal or state law to the extent they offer greater protection to the environment.

## V.   <u>ON-BOARD DIAGNOSTIC DEMONSTRATION</u>

11. Except as otherwise expressly stated herein, the applicable regulatory calculation methods, test procedures, protocols, processes, or procedures shall apply unless an alternative approach is approved by CARB.

12. <u>OBD Demonstration Testing</u>. Defendant shall test select Subject Vehicles according to the Protocol for OBD Demonstration Assessment of Emission Modifications ("OBD Test Protocol") as specified in Appendix A of this California Partial Consent Decree.

13. <u>OBD Clusters</u>. For purposes of this California Partial Consent Decree, OBD demonstration shall be classified in four clusters according to Test Group and Model Year, as follows:

a. OBD Cluster 1 as defined in Paragraph 7hh(1).

b. OBD Cluster 2 as defined in Paragraph 7hh(2).

c. OBD Cluster 3 as defined in Paragraph 7hh(3).

d. OBD Cluster 4 as defined in Paragraph 7hh(4).

14. <u>Reporting</u>. The reporting requirements of this California Partial Consent Decree do not relieve Defendant of any reporting obligations required by the Clean Air Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement. Defendant shall submit the following reports to CARB and the California Attorney General:

a. <u>Demonstration and Interim Reports</u>. Defendant shall submit or resubmit a complete Emission Modification OBD Demonstration Report and J3 Testing Report as required under Appendix A, Paragraph 4 of this California Partial Consent Decree, or OBD Interim Report as required under Appendix A, Paragraph 3, of this California Partial Consent Decree (which shall include submission of any required content in either the Emission Modification OBD Demonstration Report, J3 Testing Report, OBD Interim Report, and completion of complete testing in accordance therewith).

b. <u>OBD Noncompliance Reporting</u>. Defendant shall submit within one month after the end of the applicable semi-annual reporting period (i.e., by January 31 for the reporting period from the preceding July to December and by July 31 for the reporting period from the preceding January to June) a report that identifies any and all OBD Noncompliances.

15. <u>OBD Diagnostics</u>. Should a Subject Vehicle that received the Emission Modification be brought into one of Defendant's Business Partners for failure of an emission inspection or Inspection and Maintenance (SMOG Check) check test, Defendant shall ensure its Business Partners make OBD diagnostics testing available to all Eligible Owners and Eligible Lessees at no cost if such failure was due to the Emission Modification.

16. Determination of payment of any OBD stipulated penalties described in Paragraphs 32 through 35, if any, will be made by CARB based on OBD demonstration testing to be performed by Defendant on the OBD Clusters defined

in Paragraph 7(hh)(1)–(4), with progress updates submitted to CARB via an OBD Interim Report.

17.  Required Certification. Each written report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of a fine and imprisonment for knowing violations.

18. Defendant agrees that the certification required by Paragraph 17 is subject to California Penal Code §§ 115, 118, and 132.

19. This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

20. Whenever Defendant reasonably believes any violation of this California Partial Consent Decree or any other event affecting Defendant's performance under this California Partial Consent Decree may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify CARB and the California Attorney General by telephone and email as soon as possible, but no later than 24 hours after Defendant first reasonably believes the violation or event may pose an immediate threat to the public health or welfare or the environment.

21. Any information provided pursuant to this California Partial Consent Decree may be used by California in any proceeding to enforce the provisions of this California Partial Consent Decree and as otherwise permitted by law.

## VI. CARB MITIGATION PAYMENT

22. **CARB Mitigation Payment**. Within 30 Days of the Effective Date (as described in Section XV below), Defendant shall pay directly to the "California Air Resources Board" the sum of $175,187,250 to be used to fund mitigation actions or projects that reduce NOx emissions in California (the "CARB Mitigation Payment"). These funds shall be deposited into the Air Pollution Control Fund for this purpose of reducing NOx emissions in California through CARB mitigation programs.

23. If Defendant fails to pay the CARB Mitigation Payment to CARB according to the terms of this California Partial Consent Decree, Defendant shall be liable for interest on such CARB Mitigation Payment, accruing as of the date payment became due and continuing until payment has been made in full. Interest shall be computed at a rate of 10% per annum as specified in California Code of Civil Procedure § 685.010.

## VII. CALIFORNIA ATTORNEY GENERAL PAYMENT

24. **Monetary Payment**. Within 30 Days of the Effective Date, Defendant shall pay the California Attorney General the total amount of $33,000,000 for claims for civil penalties and attorneys' fees ("Monetary Payment"). The payments made to the California Attorney General pursuant to this Paragraph shall be separate from and in addition to the CARB Mitigation Payment required under Paragraph 22 above or any stipulated penalties required under Section VIII (Stipulated Penalty Payments) below.

25. If Defendant fails to pay the Monetary Payment to the California Attorney General according to the terms of this California Partial Consent Decree, Defendant shall be liable for interest on such Monetary Payment, accruing as of the date payment became due and continuing until payment has been made in full. Interest shall be computed at a rate of 10% per annum as specified in California Code of Civil Procedure § 685.010.

26. The Monetary Payment, any interest accrued on the Monetary Payment, the stipulated penalties pursuant to Section VIII (Stipulated Penalty Payments), and any interest accrued on the stipulated penalties paid to the California Attorney General pursuant to this California Partial Consent Decree shall be administered by the California Department of Justice and shall be used by the Environment Section of the Public Rights Division of the Attorney General's Office, until all funds are exhausted, for any of the following purposes: (1) implementation of the California Attorney General's authority to protect the environment and natural resources of the State of California pursuant to California Government Code §§ 12600 *et seq.* and as Chief Law Officer of the State of California pursuant to Article V, § 13 of the California Constitution; (2) enforcement of laws related to environmental protection, including, but not limited to, Chapters 6.5 and 6.95, Division 20, of the California Health and Safety Code, and California Government Code §§ 11135 *et seq.*; (3) enforcement of the Unfair Competition Law, California Business and Professions Code §§ 17200 *et seq.*, as it relates to protection of the environment and natural resources of the State of California; and (4) other environmental actions or initiatives which benefit the State of California and its citizens as determined by the California Attorney General.  Such funding may be used for the costs of the California Attorney General's investigation, filing fees and other court costs, payment to expert witnesses and technical consultants, purchase of equipment, laboratory analyses, personnel costs, travel costs, and other costs necessary to

pursue environmental actions or initiatives investigated or initiated by the California Attorney General for the benefit of the State of California and its citizens.

## VIII. STIPULATED PENALTY PAYMENTS

27. Defendant shall be liable for stipulated penalties to CARB or the California Attorney General, for stipulated penalties detailed in Paragraphs 28, 30, 32-37 and Paragraph 29, respectively, for violations of this California Partial Consent Decree as specified in this Section, unless excused under Section XI (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this California Partial Consent Decree, including any work plan or schedule approved under this California Partial Consent Decree, according to all applicable requirements of this California Partial Consent Decree and within the specified time schedules established by or approved under this California Partial Consent Decree.

28. **Stipulated Penalties for Late CARB Mitigation Payment**.  If Defendant fails to pay the CARB Mitigation Payment required under Paragraph 22 when due, then Defendant shall, in addition to the CARB Mitigation Payment, pay stipulated penalties directly to the "California Air Resources Board" as follows:

| Penalty Per Day | Period of Noncompliance |
| --- | --- |
| $20,000 | 1st through 30th Day |
| $40,000 | 31st through 45th Day |
| $80,000 | 46th Day and beyond |

The Mitigation Payment, any stipulated penalties and any interest accrued thereon shall be deposited into the Air Pollution Control Fund for the purpose of enhancing CARB's mobile source emissions control program through additional certification review, in-use evaluation, real-world testing, enforcement actions, and other CARB activities related to the control of air pollution.

29. **Stipulated Penalties for Late Monetary Payment to the California Attorney General**.  If Defendant fails to make the Monetary Payment to the California Attorney General required under Paragraph 24 of this California Partial Consent Decree when due, Defendant shall, in addition to the Monetary Payment, pay stipulated penalties directly to the California Attorney General as follows:

| Penalty Per Day | Period of Noncompliance |
| --- | --- |
| $20,000 | 1st through 30th Day |
| $40,000 | 31st through 45th Day |
| $80,000 | 46th Day and beyond |

30. **Failure to Perform OBD Demonstration Testing.**  If Defendant fails to perform OBD Demonstration Testing, or improperly tests, improperly selects vehicles, or fails to provide data in accordance with Appendix A of this California Partial Consent Decree, Defendant shall pay the following stipulated penalties directly to the "California Air Resources Board," which shall accrue for each Day the Emission Modification OBD Demonstration Report, described in Appendix A to this California Partial Consent Decree, remains incomplete:

| Penalty per Day | Period of Noncompliance |
| --- | --- |
| $ 20,000 | 1st through 14th Day |
| $ 40,000 | 15th through 30th Day |
| $ 60,000 | 31st Day and beyond |

31. **Pre-Approved OBD Noncompliances.**  Pre-Approved OBD Noncompliances disclosed and approved are specified in Appendix C to this California Partial Consent Decree and no stipulated penalties are owed.

32. **Additional Reported OBD Noncompliances.**  Within 60 Days of submission of the Emission Modification OBD Demonstration Report or the J3 Testing Report covering an OBD Cluster(s) or discovery through Defendant's internal processes within 365 days of the Effective Date, if Defendant reports any

OBD Noncompliance that was not a Pre-Approved OBD Noncompliance listed in Appendix C of this California Partial Consent Decree using Appendix D within the same OBD Cluster(s), Defendant shall pay the "California Air Resources Board" a stipulated penalty per OBD cluster:

<u>Penalty per Cluster</u>

$1,420,425 per OBD Noncompliance for Cluster 1

$1,804,500 per OBD Noncompliance for Cluster 2

$1,143,375 per OBD Noncompliance for Cluster 3

$655,350 per OBD Noncompliance for Cluster 4

For avoidance of doubt, this Paragraph 32 does not apply to OBD Noncompliances Resulting in Mandatory Recall or OBD Noncompliances with Inspection and Maintenance (SMOG Check).

33. **Unreported OBD Noncompliances.**  If CARB determines that one or more vehicles in Clusters 1-4 fail to comply with the OBD requirements in the applicable version of Cal. Code Regs., tit. 13, § 1968.2 and Defendant did not disclose such failure to comply in the Emission Modification OBD Demonstration Report or the J3 Testing Report covering an OBD Cluster(s), and if such failure is not a Pre-Approved OBD Noncompliance or Additional Reported OBD Noncompliance, Defendant shall pay the "California Air Resources Board" a stipulated penalty per OBD Cluster:

<u>Penalty per Cluster</u>

$1,893,900 per OBD Noncompliance for Cluster 1

$2,406,000 per OBD Noncompliance for Cluster 2

$1,524,500 per OBD Noncompliance for Cluster 3

$873,800 per OBD Noncompliance for Cluster 4

For avoidance of doubt, this Paragraph 33 does not apply to OBD Noncompliances Resulting in Mandatory Recall or OBD Noncompliances with Inspection and

Maintenance (SMOG Check).

34. **OBD Noncompliance Resulting in Mandatory Recall**.  If one or more vehicles in Clusters 1-4 has an OBD Noncompliance Resulting in a Mandatory Recall, for each and every OBD Noncompliance resulting in a mandatory recall, as discussed in Cal. Code Regs., tit. 13, § 1968.5, Defendant shall pay the "California Air Resources Board" a stipulated penalty per OBD cluster:

Penalty per Cluster

$18,939,000 per OBD Noncompliance for OBD Cluster 1

$24,060,000 per OBD Noncompliance for OBD Cluster 2

$15,245,000 per OBD Noncompliance for OBD Cluster 3

$8,738,000 per OBD Noncompliance for OBD Cluster 4

For the avoidance of doubt, any stipulated penalty payment under this Paragraph 34 satisfies any obligation to conduct a recall for an OBD Noncompliance Resulting in a Mandatory Recall.

35. **OBD Noncompliance with Inspection and Maintenance (SMOG Check)**.  If one or more vehicles in Clusters 1-4 has an OBD Noncompliance with Inspection and Maintenance (SMOG Check), for each and every OBD Noncompliance with Inspection and Maintenance (SMOG Check), Defendant shall pay the "California Air Resources Board" a stipulated penalty per OBD cluster:

Penalty per Cluster

$7,102,125 per OBD Noncompliance for OBD Cluster 1

$9,022,500 per OBD Noncompliance for OBD Cluster 2

$5,716,875 per OBD Noncompliance for OBD Cluster 3

$3,276,750 per OBD Noncompliance for OBD Cluster 4

Defendant shall also submit to CARB for review and approval a remedial plan in accordance with Cal. Code Regs., tit. 13, § 1968.5(d) to address each OBD Noncompliance, and shall recall each affected Eligible Vehicle consistent with Cal.

Code Regs., tit. 13, § 1968.5(d) and this California Partial Consent Decree. Defendant shall not be subject to the OBD recall provisions if an Eligible Vehicle fails or is otherwise not able to complete the Inspection and Maintenance program, pursuant to Cal. Code Regs., tit. 13, § 1968.5(d), solely because insufficient miles have been accumulated on the vehicle to clear any fault codes or set the Inspection and Maintenance Readiness Flags to "ready" or "complete" following application of the Emission Modification.

36. **Stipulated Penalties for Late Payment of Any OBD Noncompliance Stipulated Penalties**. If Defendant fails to make any stipulated penalty payment in relation to the Additional Reported OBD Noncompliance, Unreported OBD Noncompliance, OBD Noncompliance Resulting in Mandatory Recall, or OBD Noncompliance with Inspection and Maintenance (SMOG Check) required under Paragraphs 32 through 35 of this California Partial Consent Decree when due, Defendant shall pay additional stipulated penalties to the "California Air Resources Board" as follows:

| Penalty Per Day | Period of Noncompliance |
|---|---|
| $20,000 | 1st through 30th Day |
| $40,000 | 31st through 45th Day |
| $80,000 | 46th Day and beyond |

37. **Stipulated Penalties for Failure to Submit a Complete Emission Modification OBD Demonstration Report, J3 Testing Report, or OBD Interim Report**. If Defendant fails to timely submit or resubmit a complete Emission Modification OBD Demonstration Report as required under Appendix A, Paragraph 4, J3 Testing Report as required under Appendix A, Paragraph 4, or OBD Interim Report as required under Appendix A, Paragraph 3, of this California Partial Consent Decree (which shall include failure to submit any required content in either the Emission Modification OBD Demonstration Report, J3 Testing Report, or OBD

Interim Report, or to complete testing in accordance therewith), Defendant shall pay the "California Air Resources Board" a stipulated penalty ("OBD Report Penalty Payment") for each Day the report remains incomplete or unsubmitted:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $ 20,000 | 1st through 14th Day |
| $ 40,000 | 15th through 30th Day |
| $ 80,000 | 31st Day and beyond |

38. Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously per report for separate violations of this California Partial Consent Decree.

39. CARB and/or the California Attorney General, for stipulated penalties detailed in Paragraphs 28, 30, 32-37 and Paragraph 29, respectively, shall issue any demand for stipulated penalties in writing to Defendant.  The written demand for payment of stipulated penalties shall specifically identify the violation.

40. Defendant shall pay any stipulated penalties to CARB and/or the California Attorney General, detailed in Paragraphs 28, 30, 32-37 and Paragraph 29, respectively, within 30 Days of receiving the written demand.

41. CARB and/or the California Attorney General may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this California Partial Consent Decree.  However, no action by CARB or the California Attorney General may reduce or waive stipulated penalties due to the other.

42. Stipulated penalties shall continue to accrue as provided in Paragraph 38, during any dispute resolution, but need not be paid until the following:

CALIFORNIA PARTIAL CONSENT DECREE

a. If the dispute is resolved by agreement of the Parties or by a decision of CARB and/or the California Attorney General that is not appealed to the District Court, Defendant shall pay accrued penalties determined to be owed, together with interest, to CARB and/or the California Attorney General, as applicable, within 30 Days of the effective date of the agreement or the receipt of CARB's and/or the California Attorney General's decision or order, whichever is later.

b. If the dispute is appealed to the District Court and CARB and/or the California Attorney General prevail(s) in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owed, together with interest as provided in Paragraph 44, within 60 Days of receiving the Court's decision or order, except as provided in Paragraph 42c, below.

c. If any Party appeals the District Court's decision and CARB and/or the California Attorney General prevails(s) in whole or in part, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

43. Upon the Effective Date, the stipulated penalty provisions of this California Partial Consent Decree shall be retroactively enforceable with regard to any and all violations of requirements of this California Partial Consent Decree that have occurred from the Date of Lodging to the Effective Date, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this California Partial Consent Decree is entered by the Court.  Defendant shall pay stipulated penalties owing to CARB and/or the California Attorney General, for penalties detailed in Paragraphs 28, 30, 32-37 and Paragraph 29, respectively, in the manner set forth and with the confirmation notices required by Section IX (Payment Requirements), except that the transmittal

letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

44. If Defendant fails to pay stipulated penalties according to the terms of this California Partial Consent Decree, Defendant shall be liable for interest on such penalties, accruing as of the date payment became due and continuing until payment has been made in full.  Interest shall be computed at a rate of 10% per annum as specified in California Code of Civil Procedure § 685.010.  Nothing in this Paragraph shall be construed to limit CARB and/or the California Attorney General, where applicable, from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

45. The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this California Partial Consent Decree.

46. Stipulated penalties are not CARB's or the California Attorney General's exclusive remedy for violations of this California Partial Consent Decree, including violations of this California Partial Consent Decree that are also violations of law. Subject to the provisions of Section XIII (Effect of Settlement/Reservation of Rights), CARB and the California Attorney General expressly reserve the right to seek any other relief they deem appropriate for Defendant's violation of this California Partial Consent Decree or applicable law, including but not limited to an action against Defendant for statutory penalties, additional administrative or injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this California Partial Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this California Partial Consent Decree (to CARB or the California Attorney General, as appropriate).

# IX.   **PAYMENT REQUIREMENTS**

47. Payments required to be made to the "California Air Resources Board" under this California Partial Consent Decree shall be issued by check, credit card, wire transfer, or portal using instructions provided separately by CARB in a Payment Transmittal Form.  Defendant is responsible for all payment processing fees.  Payments shall be accompanied by a Payment Transmittal Form (which CARB will provide to the addressees listed in Section XIV (Notices) no later than 14 Days after the Effective Date to ensure proper application.  At the time payment is made, Defendant shall provide CARB with proof of payment including a copy of the Payment Transmittal Form to the CARB email address provided in Paragraph 84.

48. Should payment instructions change, CARB will provide notice to Defendant in accordance with Section XIV (Notices).

49. Except as otherwise provided by this California Partial Consent Decree, all funds paid to the "California Air Resources Board" in this California Partial Consent Decree, shall be deposited into the Air Pollution Control Fund, for the purpose of enhancing CARB's mobile source emissions control program through additional certification review, mitigation, in-use evaluation, real-world testing, enforcement actions, and other CARB activities related to the control of air pollution.

50. Payments required to be made to the California Attorney General pursuant to this California Partial Consent Decree shall be payable by check or by wire transfer.  The check (or wire transfer) for the payment to the California Attorney General shall be made payable to the "CA DOJ – Litigation Fund."  The check shall bear on its face the case name ("People v. Cummins") and the internal docket number for this matter (OK2022302265).  If payment is by wire transfer, Defendant shall comply with instructions provided by the California Attorney

General.  The California Attorney General will provide such payment instructions within 14 Days of the Effective Date.  Defendant is responsible for any bank charges incurred for processing wire transfers. At the time that payment is made to the California Attorney General, Defendant shall provide the California Attorney General with proof of payment in accordance with Section XIV (Notices).

51. Defendant's requirement to make any payment to CARB under this California Partial Consent Decree will be extended by each Day of CARB's delay in providing the Payment Transmittal Form with requisite payment instructions.

52. For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, and 26 C.F.R. § 1.162-21(b)(2), performance by Cummins of Section II (Applicability), Paragraph 5; Section V (On-Board Diagnostic Demonstration), Paragraphs 11-20; Section VI (CARB Mitigation Payment), Paragraph 22; Section X (Additional Compliance Requirements), Paragraphs 53-55; Section XIV (Notices), Paragraphs 84-85, and related appendices, is restitution, remediation, or required to come into compliance with law.

## X.    ADDITIONAL COMPLIANCE REQUIREMENTS

53. Continued Compliance.  Except as otherwise stated in this California Partial Consent Decree, during the regulatory useful life of the Subject Vehicles, the Subject Vehicles remain subject to, and Defendant must comply with: (1) all EPA and CARB requirements for in-use testing under 40 C.F.R. Part 86, Subpart S, and Cal. Code Regs., tit. 13, §§ 2110–2140; (2) OBD requirements pursuant to Cal. Code Regs., tit. 13, § 1968.5 (OBD enforcement provisions); (3) federal defect reporting requirements under 40 C.F.R. Part 85, Subpart T; and (4) California Emissions Warranty and Information Reporting requirements under Cal. Code Regs., tit. 13, §§ 2141–2146.  CARB reserves all rights and authorities to impose consequences if Defendant fails to comply with these testing and reporting

31

requirements, including if such testing demonstrates that the Subject Vehicles exceed any applicable emission limit.

54. Except as otherwise expressly stated herein, the applicable regulatory requirements (i.e., administrative processes such as vehicle recall) shall apply unless an alternative approach is approved by CARB.

55. Defendant shall not, and must ensure its Business Partners do not sell or cause to be sold, resell or cause to be resold, or lease or cause to be leased, any Subject Vehicle in Defendant's or its Business Partners' possession, or obtained by Defendants or its Business Partners as a trade-in or lease termination until:

    a. Defendant or its Business Partners perform the Emissions Modification on any such Subject Vehicle; and

    b. Defendant or its Business Partners execute all emission-related service actions and repairs required to bring the vehicle into compliance with this California Partial Consent Decree, apply any and all other recalls concerning the Subject Vehicle, and execute any other required service actions.

## XI.  FORCE MAJEURE

56. "Force majeure," for purposes of this California Partial Consent Decree, means any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors or Business Partners, that delays or prevents the performance of any obligation under this California Partial Consent Decree despite Defendant's best efforts to fulfill the obligation.  Given the need to protect public health and welfare and the environment, the requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure – as it is occurring and following the potential force majeure – such that any delay or non-performance is, and any adverse effects of the delay or non-performance are, minimized to the greatest extent possible.  "Force

majeure" does not include financial inability to perform any obligation under this California Partial Consent Decree.

57. If any event occurs for which Defendant will or may assert a claim of force majeure, Defendant shall provide initial notice to California by electronic mail transmitted to the email addresses set forth in Section XIV (Notices).  The deadline for the initial notice is seven Days after Defendant first knew or should have known that the event would likely delay or prevent performance.  Defendant shall be deemed to know of any circumstance of which any Business Partner of, contractor of, subcontractor of, or entity controlled by Defendant knew or should have known.

58. If Defendant seeks to assert a claim of force majeure concerning the event, within seven Days after the initial notice under Paragraph 57, Defendant shall submit a further notice to Plaintiff by electronic mail transmitted to the email addresses set forth Section XIV (Notices).  That further notice shall include: (i) an explanation and description of the event and its effect on Defendant's completion of the requirements of the California Partial Consent Decree; (ii) a description and schedule of all actions taken or to be taken to prevent or minimize the delay and/or other adverse effects of the event; (iii) if applicable, the proposed extension of time for Defendant to complete the requirements of the California Partial Consent Decree; (iv) Defendant's rationale for attributing such delay to a force majeure; (v) a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health or welfare or the environment; and (vi) all available proof supporting the claim that the delay was attributable to a force majeure.

59. Failure to submit a timely or complete notice or claim under Paragraphs 57 or 58 regarding an event precludes Defendant from asserting any claim of force majeure regarding that event.

33

60.  If CARB and/or the California Attorney General, where applicable, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this California Partial Consent Decree that is affected by the force majeure event will be extended by Plaintiff for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  Plaintiff will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

61. If Plaintiff does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, Plaintiff will notify Defendant in writing of that decision.

62. If Defendant elects to invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution), it shall do so no later than 15 Days after receipt of Plaintiff's notice.  In any such proceeding, Defendant has the burden of proving that it is entitled to relief under Paragraph 58, that its proposed excuse or extension was or will be warranted under the circumstances, and that it complied with the requirements of Paragraphs 56–58.  If Defendant carries this burden, the delay or non-performance at issue shall be deemed not to be a violation by Defendant of the affected obligation of this California Partial Consent Decree identified to Plaintiff and the Court.

## XII.   DISPUTE RESOLUTION

63. Unless otherwise expressly provided for in this California Partial Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising between Plaintiff and Defendant under or with respect to this California Partial Consent Decree.  Defendant's failure to seek resolution of a dispute under this Section concerning an issue of which it had notice

1   and an opportunity to dispute under this Section prior to an action by Plaintiff to

2   enforce any obligation of Defendant arising under this California Partial Consent

3   Decree precludes Defendant from raising any such issue as a defense to any such

4   enforcement action.

5       64. <u>Informal Dispute Resolution</u>.  Any dispute subject to dispute resolution

6   under this California Partial Consent Decree shall first be the subject of informal

7   negotiations.  The dispute shall be considered to have arisen when Defendant sends

8   Plaintiff a written Notice of Dispute by email and mail in accordance with Section

9   XIV (Notices).  Such Notice of Dispute shall state clearly the matter in dispute.

10  The period of informal negotiations shall not exceed 30 Days from the date

11  Defendant sent its Notice of Dispute, unless that period is modified by a written

12  agreement of the Parties.  If Plaintiff and Defendant cannot resolve a dispute by

13  informal negotiations, then the position advanced by Plaintiff shall be considered

14  binding unless, within 30 Days after the conclusion of the informal negotiation

15  period, Defendant invokes formal dispute resolution procedures as set forth below.

16      65. <u>Formal Dispute Resolution</u>.  Defendant shall invoke formal dispute

17  resolution procedures, within the time period provided in the preceding Paragraph,

18  by sending Plaintiff a written Statement of Position regarding the matter in dispute

19  by email and mail, in accordance with Section XIV (Notices).  The Statement of

20  Position shall include, but need not be limited to, any factual data, analysis, or

21  opinion supporting Defendant's position and any supporting documentation relied

22  upon by Defendant.

23      66. Plaintiff will send Defendant its Statement of Position by email and mail

24  within 45 Days of receipt of Defendant's Statement of Position, in accordance with

25  Section XIV (Notices).  Plaintiff's Statement of Position shall include, but need not

26  be limited to, any factual data, analysis, or opinion supporting that position and any

27  supporting documentation relied upon by Plaintiff.  Plaintiff's Statement of Position

28

is binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

67. <u>Judicial Dispute Resolution</u>.  Defendant may seek judicial review of the dispute by filing with the Court and serving on Plaintiff a motion requesting judicial resolution of the dispute.  The motion must be filed within 30 Days of receipt of Plaintiff's Statement of Position pursuant to the preceding Paragraph.  The motion may not raise any issue that Defendant did not raise in informal dispute resolution pursuant to Paragraph 64 unless the issue was first raised by Plaintiff's Statement of Position.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the California Partial Consent Decree.

68. Plaintiff shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

69. <u>Standard of Review: Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this California Partial Consent Decree, in any dispute brought pursuant to Paragraph 67 that pertains to: (a) the adequacy or appropriateness of plans or procedures to implement plans, schedules, or any other item that requires approval by Plaintiff under this California Partial Consent Decree; (b) the adequacy of the performance of work undertaken pursuant to this California Partial Consent Decree; and/or (c) all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of Plaintiff is arbitrary and capricious or otherwise not in accordance with law based on the administrative record.  For purposes of this

Paragraph, Plaintiff will maintain an administrative record of the dispute, which will contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Prior to the filing of any motion, the Parties may submit additional materials to be part of the administrative record pursuant to applicable principles of administrative law.

70. <u>Standard of Review: Other Disputes</u>.  Except as otherwise provided in this California Partial Consent Decree, in any other dispute brought pursuant to Paragraph 67, Defendant shall bear the burden of demonstrating that its position complies with this California Partial Consent Decree.

71. In any disputes brought under this Section, it is hereby expressly acknowledged and agreed that this California Partial Consent Decree was jointly drafted in good faith by Plaintiff and Defendant.  Accordingly, the Parties hereby agree that any and all rules of construction to the effect that ambiguity is construed against the drafting party shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of this California Partial Consent Decree.

72. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this California Partial Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 42.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Paragraph 42.

### XIII.  <u>EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS</u>

73. Upon the Effective Date, and subject to the reservations in Paragraph 76, Defendant's satisfaction of the requirements in this California Partial Consent Decree shall resolve, settle, and release:

37

a.  CARB's civil claims for the violations alleged in the California Complaint pursuant to the California Health and Safety Code, California Vehicle Code, and California Code of Regulations pled by CARB (not otherwise resolved by the US/CARB Consent Decree) against Defendant, its successors, and all affiliates, parents, or subsidiaries of Defendant and any present or former directors, officers, or employees of Defendant or their affiliates, parents, or subsidiaries, provided that such persons were acting within the scope of their employment; and

b. the UCL claims that the California Attorney General alleged in the California Complaint regarding the Subject Vehicles against Defendant, its successors, and all affiliates, parents, or subsidiaries of Defendant and any present or former directors, officers, or employees of Defendant or their affiliates, parents, or subsidiaries, provided that such persons were acting within the scope of their employment;

c.  the public nuisance claim under California Civil Code § 3494 that the California Attorney General alleged in the California Complaint regarding the Subject Vehicles against Defendant, its successors, and all affiliates, parents, or subsidiaries of Defendant and any present or former directors, officers, or employees of Defendant or their affiliates, parents, or subsidiaries, provided that such persons were acting within the scope of their employment; and

d.  all claims for costs and attorneys' fees as alleged in the California Complaint.

74. To the extent that any claims released herein are duplicative of claims to be released, settled, or resolved by Plaintiff under the US/CARB Consent Decree, such claims are not released unless or until the Court enters or grants a motion to enter the US/CARB Consent Decree.

75. Neither this California Partial Consent Decree nor Defendant's consent to its entry constitutes an admission by Defendant of violations alleged in the

California Complaint or any other allegations asserted by Plaintiff related to the Subject Vehicles.  Defendant reserves all defenses, and all rights and remedies, legal and equitable, available to it in any action by a non-party pertaining to the Clean Air Act, or any other federal, state or local statute, rule or regulation.

76. Plaintiff reserves, and this California Partial Consent Decree is without prejudice to, all claims, rights, and remedies against Defendant with respect to all matters not expressly resolved in Paragraph 73.  Notwithstanding any other provision of this California Partial Consent Decree, Plaintiff reserves all claims, rights, and remedies against Defendant with respect to:

a. Enforcement of the terms of this California Partial Consent Decree;

b. Except as specifically provided in Paragraph 73, civil penalties or further injunctive relief, including prohibitory and mandatory injunctive provisions intended to enjoin, prevent, and deter future misconduct, and/or incentivize its detection, disclosure, and/or prosecution; or to enjoin false advertising, the making of false or misleading statements or omissions, the engagement in any unfair or fraudulent business practices as prohibited by California Business and Professions Code §§ 17200, *et seq.*, violation of environmental laws, violation of consumer protection laws, or the use or employment of any practice that constitutes unfair competition;

c. All rights reserved by CARB under the US/CARB Consent Decree, except as provided under this California Partial Consent Decree, including Paragraph 73 of this California Partial Consent Decree;

d. Any criminal liability;

e. Any part of any claims for the violations of securities laws or the California False Claims Act, California Government Code §§ 12650 et seq.;

f. Any and all claims for relief to consumers, including claims for restitution, refunds, rescission, damages, or disgorgement;

1

2

g. Any other claims of any officer or agency of the State of California other than CARB and the California Attorney General; and

3

h. Any claims held by individual consumers.

4

5

6

7

77. This California Partial Consent Decree, including the release set forth in Paragraph 733, does not modify, abrogate, or otherwise limit the injunctive, administrative, and other relief to be provided by Defendant under, nor any obligation of any party or person under, the US/CARB Consent Decree.

8

9

10

11

12

13

14

78. By entering into this California Partial Consent Decree, Plaintiff is not enforcing the laws of other countries, including the emissions laws or regulations of any jurisdiction outside the United States.  Nothing in this California Partial Consent Decree is intended to apply to, or affect, Defendant's obligations under the laws or regulations of any jurisdiction outside California.  At the same time, the laws and regulations of other countries shall not affect Defendant's obligations under this California Partial Consent Decree.

15

16

17

18

19

20

21

79. This California Partial Consent Decree shall not be construed to limit the rights of Plaintiff to obtain penalties or injunctive relief, except as specifically provided in Paragraph 73.  Plaintiff further reserves all legal and equitable remedies to address any imminent and substantial endangerment to public health or welfare or the environment arising at any of Defendant's facilities, or posed by the Subject Vehicles, whether related to the violations addressed in this California Partial Consent Decree or otherwise.

22

23

24

25

26

27

28

80. In any subsequent judicial proceeding initiated by Plaintiff for injunctive relief, civil penalties, or other appropriate relief relating to Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by Plaintiff in the subsequent proceeding were or should have been

brought in the instant case, except with respect to the claims that have been specifically released pursuant to Paragraph 73.

81. This California Partial Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits, and Defendant's compliance with this California Partial Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. Plaintiff does not, by its consent to the entry of this California Partial Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this California Partial Consent Decree will result in compliance with provisions of the Clean Air Act, or with any other provisions of United States, State, or local laws, regulations, or permits.

82. This California Partial Consent Decree does not limit or affect the rights of Defendant or Plaintiff against any third parties not party to this California Partial Consent Decree, nor does it limit the rights of third parties not party to this California Partial Consent Decree against Defendant, except as otherwise provided by law.

83. This California Partial Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not a party to this California Partial Consent Decree. No such third party shall be entitled to enforce any aspect of this California Partial Consent Decree or claim any legal or equitable injury for a violation of this California Partial Consent Decree.

## XIV.  NOTICES

84. Unless otherwise specified in this California Partial Consent Decree, whenever any notification or other communication is required by this California Partial Consent Decree, or whenever any communication is required in any action

41

1  or proceeding related to or bearing upon this California Partial Consent Decree or
2  the rights or obligations under this California Partial Consent Decree, it shall be
3  made in writing (except that if any attachment is voluminous, it shall be provided
4  on a disk, hard drive, or other equivalent successor technology), and shall be
5  addressed as follows:
6      All Notices shall be provided at the email or mail addresses below, as
7  applicable:
8      As to CARB by email:
9                          CumminsCD@arb.ca.gov
10     As to CARB by mail:
11                         Chief Counsel
                           California Air Resources Board
12                         Legal Office
                           1001 I Street
13                         Sacramento, California 95814
14
15     All information should be submitted to CARB and the California Attorney
16  General electronically without paper copies, where possible.
17     As to the Office of the California Attorney General (on behalf of CARB) by
18  email:
19                         mike.cayaban@doj.ca.gov
                           josh.caplan@doj.ca.gov
20                         natalie.collins@doj.ca.gov
21
22     As to Office of the California Attorney General (on behalf of CARB) by
23  mail:
24                         Joshua M. Caplan
                           Deputy Attorney General
25                         Natural Resources Law Section
                           California Department of Justice
26                         600 West Broadway, Suite 1800
27                         San Diego, CA 92101
28

As to the California Attorney General by email:

> sarah.morrison@doj.ca.gov
> elizabeth.song@doj.ca.gov
> taylor.wetzel@doj.ca.gov

As to the California Attorney General by mail:

> Sarah Morrison
> Supervising Deputy Attorney General
> Environment Section
> 300 S. Spring St., Suite 1702
> Los Angeles, CA 90013
>
> Elizabeth Song
> Deputy Attorney General
> Environment Section
> 300 S. Spring St., Suite 1702
> Los Angeles, CA 90013
>
> Taylor Wetzel
> Deputy Attorney General
> Environment Section
> 1300 I Street
> Sacramento, CA 95814

As to Defendant by mail:

> Nicole Y. Lamb-Hale
> Vice President, Chief Legal Officer and
> Corporate Secretary
> Jonathan Wood
> Vice President and Chief Technical Officer
> Cummins Inc.
> 301 E. Market Street
> Indianapolis, IN 46204

As to Defendant by email:

> To be provided by Cummins

43

85. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

## XV.   EFFECTIVE DATE

86. The Effective Date of this Consent Decree shall be deemed to be the US/CARB Consent Decree Effective Date.

## XVI.  RETENTION OF JURISDICTION

87. The Court shall retain jurisdiction over this case until termination of this California Partial Consent Decree, for the purpose of resolving disputes arising under this California Partial Consent Decree, entering orders modifying this California Partial Consent Decree, or effectuating or enforcing compliance with the terms of this California Partial Consent Decree.

## XVII. SIGNATORIES/SERVICE

88. Each undersigned representative of Defendant and Plaintiff certifies that he or she is fully authorized to enter into the terms and conditions of this California Partial Consent Decree and to execute and legally bind the Party he or she represents to this document.  The California Attorney General and CARB represent that they have the authority to execute this California Partial Consent Decree on behalf of Plaintiff and that, upon entry, this California Partial Consent Decree is a binding obligation enforceable against Plaintiff under applicable law.

89. This California Partial Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  For purposes of this California Partial Consent Decree, a signature page that is transmitted electronically (e.g., by facsimile or emailed "PDF") shall have the same effect as an original.

44

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## XVIII.    INTEGRATION

90. This California Partial Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in this California Partial Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein, with the exception of the US/CARB Consent Decree. The Parties acknowledge that there are no documents, representations, inducements, agreements, understandings or promises that constitute any part of this California Partial Consent Decree or the settlement it represents other than those expressly contained or referenced in this California Partial Consent Decree.

## XIX. MODIFICATION

91. The terms of this California Partial Consent Decree may be modified only by a subsequent written agreement signed by the Parties.  Where the modification constitutes a material change to this California Partial Consent Decree, it shall be effective only upon approval by the Court.  Plaintiff will file any nonmaterial modifications with the Court.  The correction of scrivener's errors will be considered non-material modifications.

## XX.  TERMINATION

92. With the exception of the injunctive provisions listed in Paragraph 8, termination of this California Partial Consent Decree shall occur no earlier than 5 years after Defendant's: (a) submission of the CARB Mitigation Payment required under Paragraph 22; (b) submission of the Monetary Payment to the California Attorney General required under Paragraph 24; (c) submission of any and all stipulated penalty payments required under Section VIII (Stipulated Penalty Payments); (d) completion of all requirements under the US/CARB Consent Decree; (e) compliance with all OBD demonstration testing required under

Paragraph 12; (f) submission of the Emission Modification OBD Demonstration Report, J3 Testing Report, or OBD Interim Reports required under Paragraph 14; and (h) completion of all repairs, modifications, or recalls to remedy all Inspection and Maintenance (SMOG) OBD Noncompliances as required in Paragraph 35.

93. The injunctive provisions listed in Paragraphs 8-9 of this California Partial Consent Decree shall terminate upon termination of the US/CARB Consent Decree pursuant to Section XIX (Termination) of that document.

## XXI.  FINAL JUDGMENT

94. Upon approval and entry of this California Partial Consent Decree by the Court, this California Partial Consent Decree shall constitute a final judgment of the Court as to Plaintiff and Defendant with respect to the Claims alleged in the California Complaint regarding the Subject Vehicles.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

Dated and entered this ___ day of _____, 2024.


_____

UNITED STATES DISTRICT JUDGE

1
2

FOR THE PEOPLE OF THE STATE OF CALIFORNIA BY AND THROUGH
THE CALIFORNIA AIR RESOURCES BOARD:

3
4  Date: January 9, 2024                    _____
5                                           MICHAEL P. CAYABAN
                                            Supervising Deputy Attorney General
6                                           JOSHUA M. CAPLAN
7                                           NATALIE COLLINS
                                            Deputy Attorneys General
8                                           California Department of Justice
                                            Office of the Attorney General
9                                           600 West Broadway, Suite 1800
10                                          San Diego, CA 92101
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CALIFORNIA PARTIAL CONSENT DECREE

1
2

FOR THE CALIFORNIA AIR RESOURCES BOARD:

3
4

Date: January 9, 2024

_____
LIANE RANDOLPH

5     Chair
6     California Air Resources Board
      1001 I Street
7     Sacramento, CA 95814

8
9

_____
STEVEN S. CLIFF, PH.D.

10    Executive Officer
      California Air Resources Board
11    1001 I Street
12    Sacramento, CA 95814

13
14

_____
15    ELLEN M. PETER
      Chief Counsel
16    SHANNON DILLEY
17    Assistant Chief Counsel

18
      Legal Office
19    California Air Resources Board
      1001 I Street
20    Sacramento, CA 95814

21
22
23
24
25
26
27
28

48

1    FOR THE PEOPLE OF THE STATE OF CALIFORNIA BY AND THROUGH
2    ROB BONTA, ATTORNEY GENERAL OF CALIFORNIA:

3
4    Date: January 9, 2024

     SARAH MORRISON
5    Supervising Deputy Attorney General
6    ELIZABETH SONG
     TAYLOR WETZEL
7    Deputy Attorneys General
8    California Department of Justice
     300 S. Spring St., Suite 1702
9    Los Angeles, CA 90013

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    49

1    FOR CUMMINS INC.

2

3    Date: _____

4                                        NICOLE Y. LAMB-HALE
                                         Vice President, Chief Legal Officer and
5                                        Corporate Secretary
6                                        301 E. Market Street
                                         Indianapolis, IN 46204
7

8

9

10   Date: _____

11                                       JONATHAN WOOD
                                         Vice President and Chief Technical Officer
12                                       301 E. Market Street
                                         Indianapolis, IN 46204
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    50

## APPENDIX A

**Protocol For Onboard Diagnostic (OBD) Demonstration Assessment of Emission Modification ("OBD Test Protocol")**

1. <u>OBD Test Vehicles.</u>
   a. <u>OBD Demonstration Vehicles.</u> For each of OBD Clusters 1 through 3**,** Defendant shall acquire a representative high mileage vehicle(s) or use representative high mileage vehicle(s) in Defendant's possession.
   b. <u>OBD Production Vehicle Evaluation (PVE) Vehicles.</u> For each of OBD Clusters 1 through 3 and for testing conducted in accordance with Paragraph 2.b. ("PVE Testing"), Defendant shall acquire production vehicles. The OBD PVE Vehicles may be obtained from individual consumers who advertised their vehicles for sale or from Dealers. In lieu of acquiring OBD PVE Vehicles, Defendant may use the OBD Demonstration Vehicle(s) for testing conducted in accordance with Paragraph 2.b.
   c. <u>Criteria for OBD Demonstration Vehicles and OBD PVE Vehicles (collectively, "Test Vehicles").</u>
      i. Defendant shall ensure all Test Vehicles meet the As-Received Testing Vehicle Rejection Criteria set forth at 40 C.F.R. Part 86, Subpart S, Appendix II.
      ii. Nothing in this OBD Test Protocol precludes Defendant from testing or on-road driving of a vehicle to ensure that it is in good working order prior to commencing testing under this OBD Test Protocol.
      iii. Defendant shall obtain all reasonably available records that are related to emission repairs for the Test Vehicle from internal systems and databases, including records of warranty repairs and customer-paid repairs, tester logs, and ECU data.
      iv. Prior to selection of a vehicle as a Test Vehicle, Defendant shall make all repairs necessary to ensure proper functioning of the Test Vehicle. Defendant shall not replace a part that is properly functioning, if such part has been approved under a CARB Executive Order, or is made by Defendant or their suppliers. Defendant shall provide a written description of the repairs (including part replacements), and the reason for the repairs, in the Emission Modification OBD Demonstration Report, as defined in Paragraph 4.a.
      v. After selection of a vehicle as a Test Vehicle, Defendant shall make all repairs necessary to ensure proper functioning of the Test Vehicle or choose to use a Secondary Test Vehicle in lieu of making repairs, as described in Paragraph 1.d.ii. Unless the Test Vehicle Malfunctions, Defendant shall not replace a part. Defendant shall provide a written description of the repairs (including part replacements) and the reason for the repairs, and the justification and any relevant data, in the Emission Modification OBD Demonstration Report.

vi. For part replacements performed under Paragraphs 1.c.iv. or 1.c.v., Defendant shall use a deteriorated part that has no less than half the mileage of the vehicle or replaced part at the time of the repair, except that the requirement to use deteriorated parts shall not apply to parts like seals, gaskets, screws, or clamps (installation materials).

vii. At any time, Defendant shall conduct any routine maintenance covered by the applicable owner's manual to ensure proper functioning of a Test Vehicle, provided that Defendant provides a written description of the maintenance and the reason for the maintenance in the Emission Modification OBD Demonstration Report.

d. <u>Secondary Vehicles.</u>

i. Nothing in this OBD Test Protocol prohibits Defendant from obtaining additional Secondary Test Vehicles as needed. Defendant specifically reserves the ability to obtain additional OBD Demonstration Vehicles and OBD PVE Vehicles for testing in Paragraphs 2.a. and 2.b. for any OBD Cluster. If Defendant cannot obtain additional Secondary Test Vehicles, Defendant shall notify Plaintiffs, providing proof of inability to procure Secondary Test Vehicles, and Plaintiffs shall extend the time to submit the Emission Modification OBD Demonstration Report described in Paragraph 4. to allow for procurement provided sufficient proof supports Defendant's claim.

ii. Upon a Malfunction of a Test Vehicle during testing under this OBD Test Protocol, Defendant shall follow the procedure set forth in this Paragraph 1.d.ii.

1. First, stop testing the vehicle and determine the reason for the Malfunction.

2. Second, Defendant may elect to repair the vehicle consistent with Paragraphs 1.c.v. and 1.c.vi. and continue testing, or restart testing using a Secondary Test Vehicle.

a. If Defendant elects to repair the vehicle, the repairs shall be reported to CARB in accordance with Paragraphs 4.a.i.1. and 4.a.v. of this OBD Test Protocol.

b. If Defendant elects to switch to a Secondary Test Vehicle:

i. If retaining any test results generated prior to switching to the Secondary Test Vehicle, Defendant shall provide an engineering justification explaining why the retained test results are not impacted by the Malfunction.

ii. Defendant may retain test results from an OBD Demonstration Vehicle in lieu of restarting and conducting all OBD demonstration testing required under Paragraphs 2.a.i. or 2.a.ii. on a

Secondary OBD Demonstration Vehicle if and only if the following conditions are met with respect to the OBD Demonstration Vehicle that Malfunctioned and the Secondary OBD Demonstration Vehicle: (1) Defendant performs SCR efficiency and EGR low flow monitoring demonstrations on both vehicles, (2) the calibration set is the same on both vehicles, (3) both vehicles are the same Model and Model Year, and (4) the vehicle aging meets the requirements of Paragraph 1.a.

3. Collect all data required (for each Test Vehicle), for each test, and document the Malfunction, including an explanation of the reason for the Malfunction and its impact on the test results, in accordance with the requirements of Paragraphs 4.a.i.2. and 4.a.vi. of this OBD Test Protocol.

e. <u>Emission Modification Installation.</u>

i. Prior to the commencement of testing set forth in Paragraph 2. (OBD Demonstration) for each Test Vehicle undergoing such testing, if the vehicle has not received the Emission Modification, then Defendant shall modify the Test Vehicle as follows:

1. Defendant shall reflash the affected control units, altering their software calibrations to the Emission Modification.

2. Defendant shall not make any further hardware or software changes once the testing of the Emission Modification specified in Paragraph 2. begins. This does not preclude Defendant from repairing vehicles that experience a Malfunction as described in Paragraph 1.d.ii. after the Emission Modification is installed, carrying out repairs or scheduled maintenance as permitted by Paragraphs 1.c.iv. through 1.c.vii., modifying a Test Vehicle in connection with testing conducted under Paragraph 2.

3. Nothing in this Paragraph 1.e. shall prevent Defendant from modifying an OBD Demonstration Vehicle or OBD PVE Vehicle consistent with this OBD Test Protocol in order to conduct an OBD demonstration required under this OBD Test Protocol and return the vehicle to normal operating conditions after the OBD demonstration, as permitted by 13 C.C.R. § 1968.2 (2016) or this OBD Test Protocol.

2. <u>OBD Demonstration.</u>

a. <u>OBD Durability Demonstration Vehicle Testing.</u>

i. <u>Full Demonstration of OBD Monitors OBD Cluster 1</u>. For an OBD Demonstration Vehicle in OBD Cluster 1, Defendant shall conduct a full OBD demonstration as set forth at 13 C.C.R. § 1968.2(h)(4) (2016),

using the test methods (demonstration test sequence, failed part, and IRAF) set forth at 13 C.C.R. § 1968.2(h)(5) (2016), and apply the evaluation criteria set forth at 13 C.C.R. § 1968.2(h)(6) (2016). CARB shall not prohibit Defendant from using test methods as previously approved for the respective model year test group.

ii. Critical Demonstration of OBD Monitors OBD Clusters 2 and 3. For an OBD Demonstration Vehicle in OBD Clusters 2 and 3, Defendant shall perform the test methods set forth at 13 C.C.R. § 1968.2(h)(5) (2016) and apply the evaluation criteria set forth at 13 C.C.R. § 1968.2(h)(6) (2016), for each of the following critical OBD monitors: (1) NOx converting catalyst efficiency (P20EE-SE10910), (2) diesel particulate filter ("DPF") performance efficiency (P2002-SE4758 or P2002-SE13050), (3) NMHC catalyst conversion efficiency (P0420-SE4719), (4) upstream NOx Sensor performance in-range low offset (P2201-SE5366), (5) upstream NOx Sensor performance in-range low gain error (P2201-SE5369 or P225C-SE12895), (6) upstream NOx sensor performance slow response (P2201-SE5369), (7) downstream NOx sensor performance in-range high gain error (P225E-SE12580 or P225E-SE12580), (8) fuel system pressure low deviation (P0087-SE523), (9) fuel injection quantity low rail pressure sensor in-range high (P0191-SE7209), (10) EGR system low flow (P0401-SE7296), (11) EGR system high flow (P0402-SE7295), (12) EGR system slow response (P226C-SE5043), (13) boost pressure control underboost charge flow low (P0299-SE7294), (14) boost pressure control overboost high charge flow (P0234-SE7293), (15) variable geometry turbocharger ("VGT") slow response VGT position stuck in-range (P226C-SE5043). CARB shall not prohibit Defendant from using test methods as previously approved for the respective model year test group.

iii. OBD Infrequent Regeneration Adjustment Factor (IRAF). For any OBD demonstration conducted under Paragraphs 2.a.i. and 2.a.ii., Defendant shall apply Defendant's OBD Infrequent Regeneration Adjustment Factor for threshold failure detection as used in the recall calibration applications for the respective model year test group and documented in the OBD Interim Report.

iv. Specific Alternative or Modified Monitor Demonstration Proposals. If Defendant seeks to use a specific alternative or modified OBD demonstration procedure that may be used with Executive Officer approval, Defendant shall submit, pursuant to Paragraph 3.a.iii., a proposal describing the specific alternative or modified demonstration procedure in detail for CARB approval for each OBD Cluster for which Defendant seeks to use a specific alternative or modified demonstration procedure.

v. Default Action Monitor Demonstration. For any monitor with a default action demonstrated under Paragraphs 2.a.i. and 2.a.ii., Defendant may satisfy the demonstration requirement by showing that emissions remain

below the applicable OBD threshold with a best performing unacceptable ("BPU") component and the default emission control strategy disabled through computer modifications.

vi. Defendant may perform OBD testing under Paragraphs 2.a.i. and 2.a.ii. on two OBD Demonstration Vehicles simultaneously if and only if the following conditions are met with respect to both of the OBD Demonstration Vehicles: (1) Defendant performs SCR efficiency and EGR low flow monitoring demonstrations on both vehicles, (2) the calibration set is the same on both vehicles, (3) both vehicles are the same test group, (4) the vehicle aging meets the requirements of Paragraph 1.a., and (5) Defendant conducts monitoring as determined by CARB pursuant to Paragraphs 2.a.i. and 2.a.ii. on each OBD Demonstration Vehicle.

b. Production Vehicle Evaluation Testing.

i. J1 Testing OBD Clusters 1–3. For each of OBD Clusters 1 through 3, Defendant shall conduct, for each Test Group, PVE section 1968.2(j)(1) testing on an OBD PVE Vehicle or on an OBD Demonstration Vehicle in accordance with the regulations and standards applicable to the test group at the time the test group was certified.

ii. J3 Testing OBD Clusters 1–3. Defendant shall collect and report in-use monitoring performance data as required by 13 C.C.R. § 1968.2(j)(3) (2016) (i.e., verification and reporting of in-use monitoring performance) from 15 vehicles from each OBD Cluster 1, 2, and 3, within 365 Days after this California Partial Consent Decree is entered. Vehicles shall be selected, for the purposes of this Paragraph only, in accordance with 13 C.C.R. § 1968.2(j)(3) (2016) and 13 C.C.R. § 1968.5(b)(3)(D)(ii) (2016). For each OBD Cluster, Defendant shall select, collect, and report in-use monitoring performance data equally spread across model years from at least five RAM 2500 vehicles and at least five RAM 3500 vehicles with the remaining five at the Defendant's choice. For purposes of clarity, for OBD Cluster 1, Defendant shall select, collect, and report in-use monitoring performance data from at least five 2013 model year RAM vehicles, at least five 2014 model year RAM vehicles, and at least five 2015 model year RAM vehicles; and for OBD Cluster 2, Defendant shall select, collect, and report in-use monitoring performance data from at least five 2016 model year RAM vehicles and at least five 2017 model year RAM vehicles with the remaining five vehicles at the Defendant's choice.

3. OBD Interim Report.

a. Contents and Submission Timing. Defendant shall provide, for OBD Cluster 1 within 120 days from CD entry, for OBD Cluster 2 within 210 days from CD entry, and for OBD Cluster 3 within 290 days from CD entry, for review and approval by CARB, a report for each of these OBD Clusters (the "OBD Interim Report") that contains the following:

     i. A list of proposed OBD Demonstration Vehicles, including VINs, odometer readings, model years, test groups.

     ii. If applicable, a list of proposed OBD PVE Vehicles, including VINs, odometer readings, model years, and test groups to be used for purposes of PVE Testing as required under Paragraph 2.b.

     iii. For each OBD Cluster for which Defendant seeks to use a specific alternative or modified OBD demonstration procedure other than the test methods specific in Paragraphs 2.a.i and 2.a.ii., a proposal describing the procedure for each OBD Cluster, as well as a justification for the need to use an alternative or modified OBD demonstration procedure.

     iv. Any testing data supporting Defendant's proposal that CARB may need to evaluate the proposal.

     v. A list of OBD monitors along with their corresponding OBD IRAF values to be applied during OBD testing conducted under Paragraphs 2.a.i. and 2.a.ii., including any data and information used to determine the OBD IRAF values used in the recall calibration applications for the respective Model Year test group.

b. <u>Certification</u>. Includes a certification, in accordance with Paragraph 17 of the California Partial Consent Decree, with respect to all information contained in the OBD Interim Report.

c. <u>Consultation</u>. Defendant shall make itself available, upon request by CARB, within 10 Days after Defendant submits the OBD Interim Report, to provide information that CARB needs to evaluate the OBD Interim Report.

d. <u>Response</u>. Defendant's OBD Interim Report shall be deemed approved unless otherwise notified in writing by CARB within 60 Business Days of CARB's receipt of the OBD Interim Report. Any approval, approval in part, disapproval, or failure to make a determination shall follow Paragraphs 5.a.i.1.–5.a.i.4.

4. <u>OBD Demonstration Data Collection and Dissemination.</u>

a. <u>Testing Data.</u> Defendant shall complete all testing required under this OBD Test Protocol and submit it to CARB in a single submission, as a report (the "Emission Modification OBD Demonstration Report") for each OBD Cluster, by 11:59 pm Eastern Time, for OBD Cluster 1 within 270 days from CD entry, for OBD Cluster 2 within 365 days from CD entry, and for OBD Cluster 3 within 365 days from CD entry however in no instance shall a deadline be less than thirty (30) days following CARB approval of the OBD Interim Report. If a test is not required for a specific OBD Cluster under this OBD Test Protocol, the corresponding data collection and dissemination requirement does not apply. Each Emission Modification OBD Demonstration Report shall include the following information, with the underlined Paragraph and Subparagraph "titles" serving as section and subsection headings for the Report:

     i. <u>Executive Summary.</u> An executive summary that:

       1. <u>Test Vehicle Repairs.</u> Provides a description of any repairs of any Test Vehicle pursuant to Paragraphs 1.c. and 1.d.ii.2. of this OBD Test Protocol, as well as the following information: curb weight and gross

vehicle weight.

2. <u>Test Vehicle Malfunctions.</u> Provides a description of any Malfunction of any Test Vehicle pursuant to Paragraph 1.d.ii. of this OBD Test Protocol, and describes the reason for the Malfunction, as well as the following information: curb weight and gross vehicle weight.

3. <u>Aborted/Invalidated Tests.</u> Lists all tests performed under this OBD Test Protocol that were aborted and/or invalidated for any reason and provides a description of the reason the test was aborted and/or deemed invalid (e.g., equipment problems). The data for any aborted or invalidated test shall be provided together with the data from any completed tests, in the relevant "section" of the Emission Modification OBD Demonstration Report below.

4. <u>Certification.</u> Includes a certification, in accordance with Paragraph 17 of the California Partial Consent Decree, with respect to all information contained in the Emission Modification OBD Demonstration Report, that explicitly states that the OBD Test Protocol was followed, the OBD Interim Report under Paragraph 3. was complete and accurate and any conditions specified in CARB's approval of the OBD Interim Report were followed, and that the laboratory QA/QC reports referenced in Paragraph 4.a.vii. were in effect at the time of testing and were followed.

ii. <u>Full Demonstration of OBD Monitors and Critical Demonstration of OBD Monitors.</u> For each demonstration of full and critical OBD monitors conducted under Paragraphs 2.a.i. and 2.a.ii.: (1) a written description of any OBD Noncompliance, concerns, or other nonconformities with the applicable version of 13 C.C.R. § 1968.2, (2) all test data collected as set forth at 13 C.C.R. § 1968.2(h)(5.3) (2016), (3) a Flat File of each dynamometer test that includes vehicle identification information, the VIN, a test identification number and average emissions results per phases (bags) and weighted, (4) documentation of the specific hardware used in the testing, (5) specification of demonstration method used (i.e., on-road or dynamometer test cycle) and, if CARB approved an alternate procedure under Paragraph 3.a.iii., the date of the approval, (6) all demonstration test results, and (7) any relevant associated data.

iii. <u>J1 Testing.</u> For Production Vehicle Evaluation section 1968.2(j)(1) testing conducted under Paragraph 2.b.i.: (1) a written report of the problem(s) identified and proposed corrective action (if any) to remedy the problem(s) consistent with 13 C.C.R. § 1968.2(j)(1.5.1) (2016), and (2) a report of the results and the test log file, consistent with 13 C.C.R. § 1968.2(j)(1.5.2) (2016).

iv. <u>Log Sheets.</u> For all data provided pursuant to Paragraphs 4.a.ii. (Full Demonstration of OBD Monitors and Critical Demonstration of OBD Monitors), and 4.a.iii. (J1 Testing), Defendant shall submit a log sheet listing the unique CALID and CVN numbers for the Emission Modification Configuration; for the OBD Demonstration Vehicle or OBD PVE Vehicle,

the Model Year, Model, and VIN; a test identification number; and the date, time, drive cycle, and mileage (both for the beginning and for the ending of the test). Such log sheets and data sets shall also include data for any tests that were invalidated for any reason.

v. <u>Test Vehicle Repairs.</u> Any records related to any repairs of any Test Vehicle or Secondary Test Vehicle pursuant to Paragraphs 1.c. and 1.d.ii.2. of this OBD Test Protocol. Records prior to Defendant's acquisition of the vehicle in accordance with Paragraphs 1.a. or 1.b. may be drawn from internal Defendant's systems and databases pursuant to Paragraph 1.c.iii.

vi. <u>Test Vehicle Malfunctions.</u> Any records related to any Malfunction of any Test Vehicle or Secondary Test Vehicle, and to the determination of the reason for the Malfunction pursuant to Paragraph 1.d.ii. of this OBD Test Protocol. This excludes malfunctions implanted as part of an OBD demonstration pursuant to Paragraphs 2.a.i. or 2.a.ii., or a malfunction implanted as part of a PVE test under Paragraph 2.b.i.

vii. <u>Laboratory QA/QC Reports.</u> The QA/QC report(s) for any dynamometer laboratory conducting testing pursuant to this OBD Test Protocol that covers the relevant period of dynamometer testing shall be maintained and furnished in accordance with Paragraph 14 of this California Partial Consent Decree, and shall constitute part of the administrative record of this case, pursuant to Section XII of this California Partial Consent Decree.

b. <u>J3 Testing OBD Clusters:</u> Defendant shall collect all PVE section 1968.2(j)(3) in-use monitoring performance data as required under Paragraphs 2.b.ii. and submit it to CARB in a single submission ("J3 Testing Report"), for each OBD Cluster, within 365 Days after this California Partial Consent Decree is entered. The J3 Testing Report shall include: (1) report that includes a summary of any problems identified in the data pursuant to 13 C.C.R. § 1968.2(j)(3.2) (2016) and (ii) all of the in-use performance tracking data reported through SAE J1979 (i.e., all numerators, denominators, and the ignition cycle counter(s)), the model year, the manufacturer, the vehicle model, the test group, the date the data was collected, the odometer reading, the VIN, and the ECM software calibration identification number and be in the standardized format detailed in Attachment D: Rate Based Data of ARB Mail-Out #MSC 06-23, December 21, 2006 consistent with 13 C.C.R. § 1968.2(j)(3.2) (2016).

5. <u>CARB Review and Approval of OBD Interim Report</u>

a. <u>Agency Review of Testing Data.</u> CARB shall review the OBD Interim Report to determine whether the provided information and proposed criteria pursuant to Paragraph 3.a. is acceptable to begin the OBD Demonstration Testing pursuant to Paragraph 2., according to the following criteria and timeline.

i. <u>Process for Review and Approval.</u> CARB shall have 60 Business Days, beginning at 12:01 am Eastern Time on the first Business Day after receipt of the OBD Interim Report, to approve or disapprove the same in accordance with Paragraph 14 of the California Partial Consent Decree, subject to the Consent Decree's Dispute Resolution Provisions (Section XII).

1. <u>Approval.</u> If CARB approves the OBD Interim Report in accordance with

the requirements of this OBD Test Protocol, CARB shall timely notify Defendant by letter titled: "Notice of Approval of OBD Interim Report: [corresponding OBD Cluster]," after which Defendant shall then proceed with the OBD Demonstration Testing pursuant to Paragraph 2. as described by the OBD Interim Report.

2. <u>Approval In Part.</u> If CARB approves part of a proposed OBD Interim Report and disapproves the remainder, CARB shall timely notify Defendant by letter titled: "[Notice of Partial Approval/Partial Disapproval of OBD Interim Report]: [corresponding OBD Cluster]." CARB shall identify each specific basis for disapproval in writing. Within 45 Business Days, or such other time as the parties agree to in writing, of receipt of CARB's written identification of the specific bases for the disapproval, Defendant may submit one revised proposed OBD Interim Report that must resolve all of CARB's bases for disapproval. CARB shall either approve or disapprove each complete revision within 45 Business Days of receipt of the revised proposed OBD Interim Report. If a resubmitted Submission is disapproved, in whole or in part, CARB may again require Defendant to correct any deficiencies in accordance with Paragraphs 5.a.i.2., or 5.a.i.3.; or CARB may itself/themselves correct any deficiencies, and Defendant shall implement the Submission as modified by CARB, subject to Defendant's right to invoke dispute resolution and the right of CARB to seek stipulated penalties. CARB shall then issue either a "Final Notice of Disapproval of Remainder of OBD Interim Report: [corresponding OBD Cluster]," that identifies the specific bases for the disapproval, or a "Notice of Approval of Remainder of OBD Interim Report: [corresponding OBD Cluster]." If CARB issues a Final Notice of Disapproval of Remainder, Defendant may invoke dispute resolution under Section XII (Dispute Resolution) of the California Partial Consent Decree.

3. <u>Disapproval.</u> If CARB disapproves in whole a proposed OBD Interim Report in accordance with the requirements of this OBD Test Protocol, CARB shall timely notify Defendant by letter titled: "Notice of Disapproval of OBD Interim Report: [corresponding OBD Cluster]," that identifies each specific basis for disapproval. Within 45 Business Days, or such other time as the parties agree to in writing, of receipt of CARB's letter(s), Defendant may submit one revised proposed OBD Interim Report that must resolve all of CARB's bases for disapproval. CARB shall either approve or disapprove such revision within 45 Business Days of receipt of the revised OBD Interim Report. If a resubmitted Submission is disapproved, in whole or in part, CARB may again require Defendant to correct any deficiencies in accordance with this Paragraph 5.a.i.3. or Paragraph 5.a.i.2.; or CARB may itself/themselves correct any deficiencies, and Defendant shall implement the Submission as modified by CARB, subject to Defendant's right to invoke dispute resolution and the right of CARB to seek stipulated penalties. CARB shall then issue

either a "Final Notice of Disapproval of OBD Interim Report: [corresponding OBD Cluster]," that identifies the specific bases for the disapproval, or a "Notice of Approval of OBD Interim Report: [corresponding OBD Cluster]." If CARB issues a Final Notice of Disapproval, Defendant may invoke dispute resolution under Section XII (Dispute Resolution) of the California Partial Consent Decree.

4. <u>Failure to Make a Determination.</u> If CARB fails to make a determination on a OBD Interim Report within 60 Business Days of receipt of the OBD Interim Report (as of 12:01 am Eastern Time on the 46th Day after receipt of the OBD Interim Report),  the OBD Interim Report is deemed approved in accordance with Paragraph 5.a.i.1., above, regardless of whether CARB has issued or will issue a "Notice of Approval of OBD Interim Report: [corresponding OBD Cluster]." Defendant shall proceed with the OBD Demonstration Testing pursuant to Paragraph 2. as described by the OBD Interim Report after the passage of this 60th Day.

**APPENDIX B**
**On-Board Diagnostic Clusters**

| MY | Vehicle | Test Group | Cluster |
|---|---|---|---|
| 2013 | RAM 2500 & RAM 3500 | DCEXD06.78VV | |
| 2013 | RAM 3500 | DCEXD06.78WV | |
| 2014 | RAM 2500 & RAM 3500 | ECEXD06.78VV | **Cluster 1** |
| 2014 | RAM 3500 | ECEXD06.78WV | |
| 2015 | RAM 2500 & RAM 3500 | FCEXD06.78VV | |
| 2015 | RAM 3500 | FCEXD06.78WV | |
| 2016 | RAM 2500 & RAM 3500 | GCEXD06.78VV | |
| 2016 | RAM 3500 | GCEXD06.78WV | **Cluster 2** |
| 2017 | RAM 2500 & RAM 3500 | HCEXD06.78VV | |
| 2017 | RAM 3500 | HCEXD06.78WV | |
| 2018 | RAM 2500 & RAM 3500 | JCEXD06.78VV | |
| 2018 | RAM 3500 | JCEXD06.78WV | **Cluster 3** |
| 2019 | RAM 2500 | KCEXD06.78VV | |
| 2019 | RAM 3500 | KCEXD06.78WV | **Cluster 4** |

## APPENDIX C
## Pre-approved Onboard Diagnostics (OBD) Noncompliances

| OBD Cluster | Test Group | Model Year | Name of OBD Noncompliance |
|---|---|---|---|
| 1 | DCEXD06.78VV DCEXD06.78WV | 2013 | Exhaust Temperature Control Monitoring Diesel Exhaust Fluid Tank Level Monitoring Diesel Particulate Filter Efficiency Monitoring Reductant Delivery Performance Monitoring Downstream NOx Sensor Rationality Monitoring DPF differential pressure sensor Rationality Monitoring Engine-Off Timer Monitoring |
| | ECEXD06.78VV ECEXD06.78WV | 2014 | Reductant Delivery Performance Monitoring DPF Differential Pressure Sensor Rationality Monitoring Downstream NOx Sensor Rationality Monitoring Closed-Loop Reductant Injection Control System Monitoring Engine-Off Timer Monitoring |
| | FCEXD06.78VV FCEXD06.78WV | 2015 | DOC Feedgas Monitoring Ammonia Sensor In-Range High Monitoring Idle Control System Fuel Injection Quantity Monitoring Vehicle Speed Sensor Rationality Monitoring Improper Reductant Monitoring Closed-Loop Reductant Injection Control System Monitoring Downstream Nox Sensor Rationality Monitoring Boost Pressure Control System Underboost Monitoring Reductant Delivery Performance Monitoring Exhasut gas temperature sensor rationality monitoring DPF Differential Pressure Sensor Out- |

| | | | of-Range High Monitoring<br>PVE Testing Procedure |
|---|---|---|---|
| 2 | GCEXD06.78VV<br>GCEXD06.78WV | 2016 | Specific failure mode demonstration procedure<br>PM Filter Monitoring<br>NOx Converting Catalyst Monitoring<br>Improper Reductant Monitoring<br>Equally failed fuel injection quantity and timing monitoring<br>Misfire Monitoring<br>Scan Tool Test Results Reporitng<br>DPF Differential pressure sensor out-of-range high monitoring<br>Exhasut gas temperature sensor rationality monitoring<br>Downstream NOx sensor monitoring capability<br>DOC feedgas monitoring<br>Idle Control System fuel injection quantity monitoring |
| | HCEXD06.78VV<br>HCEXD06.78WV | 2017 | Nox Converting Catalyst Monitoring and Failed Part Method<br>Misfire Monitoring<br>SCR Thermal Management Mode Monitoring<br>Improper Reductant Monitoring<br>PM Filter Monitoring<br>PVE Testing Procedure<br>Exhaust Gas Temperature Sensor Rationality Monitoring<br>Downstream NOx sensor monitoring capability<br>Cold Start Emission Reduction Strategy Monitoring |
| 3 | JCEXD06.78VV<br>JCEXD06.78WV | 2018 | NMHC Converting Catalyst Converstion Efficiency and feedgas Generation Threshold Part Method<br>NOx Converting Catalyst Monitoring<br>Upstream and Downstream NOx Sensor Monitoring<br>NOx Converting Catalyst Monitoring and Threshold Part Method<br>Misfire Monitoring<br>Cold Start Emission Reduction Strategy Monitoring |

| | | | |
|---|---|---|---|
| | | | Downstream NOx sensor monitoring capability<br>SCR Thermal Management Mode Monitoring<br>NMHC Converting Catalyst Converstion Efficiency  and feedgas Generation Threshold Part Method<br>NO$_X$ Converting Catalyst Monitoring<br>NOx Converting Catalyst Monitoring and Threshold Part Method<br>Misfire Monitoring<br>Cold Start Emission Reduction Strategy Monitoring<br>Downstream NOx sensor monitoring capability<br>SCR Thermal Management Mode Monitoring |
| 4 | KCEXD06.78VV<br>KCEXD06.78WV | 2019 | fuel system single/all equally failed injector injection quantity low monitoring<br>fuel system single/all equally failed injector injection timing advanced monitoring<br>NOx sensor monitoring<br>NOx converting catalyst monitoring and threshold failed part method (KCEXD06.78WV only)<br>NOx sensor threshold part method<br>boost pressure control system underboost monitoring<br>boost pressure control system slow response monitoring<br>PM filter monitoring standardization requirement<br>NMHC converting catalyst conversion efficiency and feedgas generation threshold part method<br>NOx converting catalyst monitoring |

**APPENDIX D**
**Additional Onboard Diagnostics (OBD) Noncompliances Template**

Cummins to fill out and submit to CARB during OBD demonstration testing.

| OBD Cluster | Test Group | Model Year | Name of OBD Noncompliance |
|---|---|---|---|
| 1 | DCEXD06.78VV<br>DCEXD06.78WV | 2013 | |
| | ECEXD06.78VV<br>ECEXD06.78WV | 2014 | |
| | FCEXD06.78VV<br>FCEXD06.78WV | 2015 | |
| 2 | GCEXD06.78VV<br>GCEXD06.78WV | 2016 | |
| | HCEXD06.78VV<br>HCEXD06.78WV | 2017 | |
| 3 | JCEXD06.78VV<br>JCEXD06.78WV | 2018 | |
| 4 | KCEXD06.78VV<br>KCEXD06.78WV | 2019 | |

**APPENDIX E**
**Identification of Subject Vehicles and Subject Vehicle Sub-Categories**

| MY | Vehicle | Test Group | Other Defining Criteria | Sub-Category |
|---|---|---|---|---|
| 2013 | RAM 2500 & RAM 3500 | DCEXD06.78VV | | 2013-2019 RAMs |
| 2013 | RAM 3500 | DCEXD06.78WV | | 2013-2019 RAMs |
| 2014 | RAM 2500 & RAM 3500 | ECEXD06.78VV | | 2013-2019 RAMs |
| 2014 | RAM 3500 | ECEXD06.78WV | | 2013-2019 RAMs |
| 2015 | RAM 2500 & RAM 3500 | FCEXD06.78VV | | 2013-2019 RAMs |
| 2015 | RAM 3500 | FCEXD06.78WV | | 2013-2019 RAMs |
| 2016 | RAM 2500 & RAM 3500 | GCEXD06.78VV | | 2013-2019 RAMs |
| 2016 | RAM 3500 | GCEXD06.78WV | | 2013-2019 RAMs |
| 2017 | RAM 2500 & RAM 3500 | HCEXD06.78VV | | 2013-2019 RAMs |
| 2017 | RAM 3500 | HCEXD06.78WV | | 2013-2019 RAMs |
| 2018 | RAM 2500 & RAM 3500 | JCEXD06.78VV | | 2013-2019 RAMs |
| 2018 | RAM 3500 | JCEXD06.78WV | | 2013-2019 RAMs |
| 2019 | RAM 2500 | KCEXD06.78VV | Software Calibration 1 | 2013-2019 RAMs |
| 2019 | RAM 3500 | KCEXD06.78WV | Software Calibration 1 | 2013-2019 RAMs |
| 2019 | RAM 2500 | KCEXD06.78VV | Software Calibration 3 | 2019-2023 RAMs |
| 2019 | RAM 3500 | KCEXD06.78WV | Software Calibration 3 | 2019-2023 RAMs |
| 2020 | RAM 2500 | LCEXD06.78VV | | 2019-2023 RAMs |
| 2020 | RAM 3500 | LCEXD06.78WV | | 2019-2023 RAMs |
| 2021 | RAM 2500 | MCEXD06.78VV | | 2019-2023 RAMs |
| 2021 | RAM 3500 | MCEXD06.78WV | | 2019-2023 RAMs |
| 2022 | RAM 2500 | NCEXD06.78VV | | 2019-2023 RAMs |
| 2022 | RAM 3500 | NCEXD06.78WV | | 2019-2023 RAMs |
| 2023 | RAM 2500 | PCEXD06.78VV | Vehicles with engines sold before 12/21/2022 | 2019-2023 RAMs |
| 2023 | RAM 3500 | PCEXD06.78WV | Vehicles with engines sold before 12/21/2022 | 2019-2023 RAMs |